444 So.2d 917 (1983)
John H. ROBERSON, Petitioner,
v.
FLORIDA PAROLE & PROBATION COMMISSION, Respondent.
FLORIDA PAROLE & PROBATION COMMISSION, Petitioner,
v.
DISTRICT COURT OF APPEAL, FIRST DISTRICT, State of Florida, Respondent.
Nos. 61653, 61210.
Supreme Court of Florida.
September 15, 1983.
Rehearing Denied February 8, 1984.
Bennett H. Brummer, Public Defender and Rory S. Stein, Asst. Public Defender, Eleventh Judicial Circuit, Miami, for petitioner, Roberson.
Enoch J. Whitney, Gen. Counsel, and Catherine L. Dickson and Rosa H. Carson, Asst. Gen. Counsels, Florida Parole and Probation Com'n, Tallahassee, for Florida Parole & Probation Com'n.
No participation, for respondent, Dist. Court of Appeal, First Dist.
Ronald D. Combs, Senior Staff Attorney and Richard A. Belz, Executive Director, Florida Institutional Legal Services, Inc., Gainesville, amicus curiae, on behalf of the respondent, District Court of Appeal, First District of Florida.
Michael J. Minerva, Gen. Counsel, Dept. of Corrections, Tallahassee, for Dept. of Corrections, State of Fla., amicus curiae.
EHRLICH, Justice.
These two cases have reached this Court via different routes. Roberson v. Florida *918 Parole & Probation Commission, 407 So.2d 1044 (Fla. 3d DCA 1981), is here for review alleging conflict with Daniels v. Florida Parole & Probation Commission, 401 So.2d 1351 (Fla. 1st DCA 1981). Florida Parole & Probation Commission v. District Court of Appeal, our Case No. 61,210, is an original action seeking a writ of prohibition to the First District Court of Appeal. The issue in both cases is the jurisdiction of the district court to hear administrative appeals under section 120.68, Florida Statutes (1981), emanating from decisions affecting parole dates made by the Parole and Probation Commission (the Commission). We have jurisdiction.[1] We hereby quash the decision in Roberson and deny the writ.
Roberson is an inmate in a Florida prison in Homestead. In October 1981 he filed a timely notice of appeal in the Third District Court of Appeal pursuant to section 120.68, Florida Statutes (1981),[2] requesting review of the determination by the Commission of his presumptive parole release date. His grievance with the procedure concerned the use by the Commission of allegedly false information in establishing his release date. The Third District refused to hear the appeal, predicating its action on the argument that prisoners are excluded from appealing under section 120.68, because of the language in section 120.52(10)(d), Florida Statutes (1981).[3]
The Roberson holding directly conflicts with Daniels on the issue of jurisdiction. The First District found that it had the power to review decisions of the Parole Commission regarding parole release dates because such decisions were deemed final agency action adversely affecting the petitioners.
The petition for writ of prohibition sought by the Commission is brought to this Court to halt implementation of the First District's decision in Daniels. The Commission in its petition propounds the argument of the Third District found persuasive in Roberson. The substance of this is that because the legislature passed section 120.52(10)[4] prohibiting prisoners from being parties to proceedings under section 120.54(16) or 120.57,[5] the legislature intended to preclude all prisoner actions from the purview of any part of chapter 120. Specifically, the Commission argues, appellate review under section 120.68 is not available to prisoners. We disagree.
To arrive at an understanding of this holding requires a reconstruction of legislative and judicial events. In 1974 this Court issued the seminal decision of Moore v. Florida Parole & Probation Commission, 289 So.2d 719 (Fla.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974). In that case, we found jurisdiction to review the discretionary acts of the Commission by means of the writ of mandamus. Mandamus jurisdiction was substantially changed by that decision because we removed the conceptual stumbling block that only ministerial acts were subject to review. Indeed, it was the discretionary acts *919 of the Commission that were allegedly so abusive of the law that led this Court to broaden the scope of review.
In that same year the legislature, in an attempt to control what it termed the "shadow government,"[6] drafted and passed into law a major revision of the Administrative Procedure Act.[7] This so-called "shadow government," a government of agency rules and regulations, was the natural consequence of a governmental branch that had experienced unprecedented expansion and growth.[8] Its wide array of administrative requirements seemed to confuse and intimidate the citizenry, who apparently felt they had almost no control or voice in the actions taken by this branch. Among other things, this legislation was designed to cure the alleged ills of this "shadow government" by making the rulemaking and adjudicative procedures uniform from agency to agency, by bringing the process out into the open so that citizens would be aware of how rules were made, and by allowing citizen participation in the promulgation thereof. The APA was intended to apply to all agencies unless specifically exempted under the Act. Graham Contracting, Inc. v. Department of General Services, 363 So.2d 810 (Fla. 1st DCA 1978), cert. denied, 373 So.2d 457 (Fla. 1979). Additionally, it presented a more streamlined means whereby individuals who felt that their substantial interests were being affected by agency action could challenge the agency action in administrative proceedings. This encouraged consistency and fairness in agency action, insured by a clarified and comprehensive scheme for judicial review. Thus the light was beginning to shine on the "shadow government."
In 1977 the First District Court of Appeal entertained and responded to the case of Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA), cert. denied, 359 So.2d 1215 (Fla. 1978). Jerry was an inmate at a state correctional institution and was subjected to disciplinary confinement. He challenged under chapter 120 the rule under which he was disciplined. That court's decision, though finding that the instant prisoner had no standing to challenge the rule, indicated that chapter 120 would apply to prisoners.
The Department of Offender Rehabilitation immediately sought an exemption from the Administration Commission under section 120.63, Florida Statutes.[9] This was a temporary exemption and the department then sought legislative changes. This resulted in adding to the statute the language now relied on by the Commission.[10]
*920 This Court's examination of the documents and materials in the archives supports the conclusion that section 120.52(10) does nothing more than what it says that it does: Prisoners cannot be parties to proceedings pursuant to section 120.54(16) and section 120.57.[11] We hold that the rest of the provisions of that chapter are therefore clearly applicable to prisoners. All of the material reviewed points to this result and we will not give it a broader prohibition than truly intended.
Furthermore, following Moore, this Court laid to rest the Commission's argument that it is a creature of the executive branch and immune to the dictates of the legislature. Owens v. State, 316 So.2d 537 (Fla. 1975). Subsequently, after an extensive investigation concerning the abuse of discretion involving the granting of parole,[12] the legislature passed the Objective Parole Guidelines Act of 1978, chapter 78-417, Laws of Florida. The intent of that act was to cure the abuses of unbridled discretion, and present a fair and objective set of standards applicable to parole matters. § 947.002, Fla. Stat. (1981).
Despite this concerted effort, abuse of discretion or misinterpretation of the law continued to creep into the process. See, e.g., McKahn v. Florida Parole & Probation Commission, 399 So.2d 476 (Fla. 1st DCA 1981). The First District was constantly policing the work of the Commission either by mandamus or habeas corpus. See James v. Florida Parole & Probation Commission, 395 So.2d 197 (Fla. 1st DCA 1981); Battis v. Florida Parole & Probation Commission, 386 So.2d 295 (Fla. 1st DCA 1980).
It was therefore inevitable that the two legislative acts should meet, and they did in Daniels. With the issue squarely before the district court it was found, and correctly so, that the appellate review granted by section 120.68 was the vehicle available to review Commission determinations concerning parole made under the governmental "machinery" provided for by chapter 947. We find that decision to be a proper one.
We agree with the district court's analysis of the application of the review power to agency action, and its entire interpretation of parties and proceedings subject to review. We adopt in full its logical rationale. (Daniels, 401 So.2d at 1352-57).
Looking beyond our own jurisdiction, we find that appellate review of parole decisions is nothing new or radical. See Foggy v. Arizona Board of Pardons & Paroles, 108 Ariz. 470, 501 P.2d 942 (1972); Willard v. Ferguson, 358 S.W.2d 516 (Ky. 1962); Mastriana v. New Jersey Parole Board, 95 N.J. Super. 351, 231 A.2d 236 (1967).
We return to the wisdom of Moore wherein we said, "[w]hile there is no absolute right to parole, there is a right to a proper consideration for parole," 289 So.2d at 720, because:
[a] prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime. No iron curtain is drawn between the Constitution and the *921 inmates of prisons in this country. Consideration for parole is an aspect of liberty to which at least minimal due process must extend... . It has been said, government action must not only be fair, it must appear to be fair. We agree that, "one of the best procedural protections against arbitrary exercise of discretionary power lies in the requirement of findings and reasons that appear to reviewing judges to be rational."
Phillips v. Williams, 583 P.2d 488, 490 (Okl. 1978), vacated, 442 U.S. 926, 99 S.Ct. 2853, 61 L.Ed.2d 294 (1979) (quoting Monks v. New Jersey State Parole Board, 58 N.J. 238, 245, 277 A.2d 193, 196 (1971)) (footnotes omitted) (original emphasis deleted; emphasis supplied). The only way to assure a proper respect for the rights of prisoners is to insure judicial review. See, e.g., Oishi v. Florida Parole and Probation Commission, 418 So.2d 329 (Fla. 1st DCA 1982).
There should be no room for a "shadow government" in a government in the sunshine.
Accordingly, we deny the petition for writ of prohibition, quash the opinion of the district court in Roberson, and approve the opinion in Daniels.[13]
It is so ordered.
BOYD, OVERTON and McDONALD, JJ., concur.
ALDERMAN, C.J., dissents with an opinion.
ADKINS, J., dissents.
ALDERMAN, Chief Justice, dissenting.
I would grant the petition for writ of prohibition to the First District Court of Appeal which the majority now denies, and I would approve the Third District Court's decision in Roberson v. Florida Parole and Probation Commission, 407 So.2d 1044 (Fla. 3d DCA 1981), which the majority disapproves.
In Roberson, the Third District correctly held that Roberson, a state prisoner claiming error in the determination of his presumptive parole release date, could not maintain an administrative appeal to the district from that determination, pursuant to section 120.68, Florida Statutes (1979).
Section 120.52(10)(d) expressly provides that prisoners defined by section 944.02(5) are not parties for purposes of proceedings under section 120.57. Section 120.57 encompasses the proceedings resulting in fixing presumptive parole release dates. If a prisoner cannot be a party for purposes of a section 120.57 proceeding, then it can only logically follow that he cannot subsequently become a party eligible to appeal under section 120.68 from the adverse ruling resulting from the proceeding setting the presumptive parole release date.
The legislature, this past session, clarified its intent relative to this issue. Its clarification is consistent with the Third District's decision in Roberson. Chapter 83-78 specifically states that prisoners, defined in section 944.02(5), may not seek review under section 120.68 of any agency action other than proceedings under section 120.54(3), (4), (5), or (9) or section 120.56, which relate to rulemaking procedures. Chapter 83-78 further adds, "[p]arolees shall not be considered parties for purposes of agency action or judicial review when the proceedings relate to revision or revocation of parole."
In my view, the Third District in Roberson correctly dismissed Roberson's appeal. The First District in Daniels v. Florida Parole and Probation Commission, 401 So.2d 1351 (Fla. 1st DCA 1981), erroneously concluded that section 120.68 does provide prisoners an avenue for judicial review of administrative rulings setting presumptive parole release dates.
*922 Accordingly, I would approve the Third District's decision in Roberson, and I would grant the Florida Parole and Probation Commission's petition for writ of prohibition to the First District.
NOTES
[1] Art. V, § 3(b)(3) & art. V, § 3(b)(7), Fla. Const.
[2] 120.68 Judicial review. 

(1) A party who is adversely affected by final agency action is entitled to judicial review. For purposes of this section, a district school board, whose decision is reviewed under the provisions of s. 231.36 and whose final action is modified by a superior administrative decision, shall be a party entitled to judicial review of the final action. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.
[3] The pertinent part of section 120.52(10) reads as follows:

Prisoners as defined in s. 944.02(5) shall not be considered parties for the purposes of obtaining proceedings under s. 120.54(16) or s. 120.57, nor shall parolees be considered parties for these purposes when the proceedings relate to the revocation of parole.
[4] Ch. 78-28, Laws of Fla.
[5] Section 120.54(16) offers a party a hearing if the party's substantial interests are not served in the normal rule-making process. Section 120.57 offers a full panoply of procedural rights, including a hearing, in matters determining a party's substantial interests.
[6] The term "shadow government" was referred to repeatedly by members of the Subcommittee on the APA in this context. (See tape recordings of meeting of Subcommittee on the APA, Florida House of Representatives, March 29, 1978, located in Series 19, carton 410, Archives of State Library). We are aware that this is a derivative of the term "shadow cabinet" as defined in W. Safire, The New Language of Politics: An Anecdotal Dictionary of Catchwords, Slogans, and Political Usage 396-97 (1968).
[7] Ch. 74-310, Laws of Fla.; ch. 120, Fla. Stat. (1974).
[8] See Kennedy, A National Perspective of Administrative Law and the Florida Administrative Procedure Act, 3 Fla.St.U.L.Rev. 65 (1975); Levinson, The Florida Administrative Procedure Act: 1974 Revision and 1975 Amendments, 29 U.Miami L.Rev. 617 (1975).
[9] 120.63 Exemption from act. 

(1) Upon application of any agency, the Administration Commission may exempt any process or proceeding governed by this act from one or more requirements of this act:
... .
(2)(b) An exemption and any alternative procedure prescribed shall terminate 90 days following adjournment sine die of the then-current or next regular legislative session after issuance of the exemption order, or upon the effective date of any subsequent legislation incorporating the exemption or any partial exemption related thereto, whichever is earlier. The exemption granted by the commission shall be renewable upon the same or similar facts not more than once. Such renewal shall terminate as would an original exemption.
[10] See Staff Analysis, H.B. 420, Governmental Operations Committee, House of Representatives, dated March 3, 1978. We have gleaned the legislative intent from the bill files and tape recordings (Mar. 29, Apr. 5, 1978) of the meetings of the House Governmental Operations Committee and the Subcommittee on the APA, Series 19, Carton 410, Archives of State Library. H.B. 420 and S.B. 209 were companion measures introduced during the 1978 session. They were considerably broader in scope as to excluding prisoners from the purview of the APA, proposing:

Prisoners as defined in s. 944.02(5) shall not be considered parties for the purposes of obtaining proceedings under s. 120.54(3)-(6) or (16), s. 120.56, or s. 120.57.
Those parts underscored did not pass. The House bill was significantly amended on the floor of the House. The Senate measure went to conference. It appears evident that neither body intended a broad exclusion from Chapter 120.
[11] HB 420 and SB 209 also limited the rule-making process as to prisoners, affording them only the opportunity to submit written statements as to rules. Section 120.54(3) was amended by chapter 78-28, Laws of Fla., by the addition of the following:

Prisoners, as defined in s. 944.02(5), may be limited by the Department of Corrections to an opportunity to submit written statements concerning intended action on any department rule.
[12] House of Representatives Committee on Corrections, Oversight Report: The Florida Parole and Probation Commission, May 1978.
[13] We recognize the import of the new law, Chapter 83-78, Laws of Florida, discussed in Chief Justice Alderman's dissent, but we decline to impute the intent of this current legislature in its most recent session to the legislatures which preceded it and enacted the laws this opinion interprets.