874 So.2d 673 (2004)
Sally O'CONNELL and Donna Meltzer, individuals, and Martin County Conservation Alliance, Inc., a Florida not-for-profit corporation, Appellants,
v.
FLORIDA DEPARTMENT OF COMMUNITY AFFAIRS, Martin County, Florida, Dick Blydenstein and Economic Council of Martin County, Inc., Appellees.
No. 4D03-380.
District Court of Appeal of Florida, Fourth District.
May 19, 2004.
Rehearing Denied July 1, 2004.
*674 Joan Wilcox, Regional Counsel, of the Environmental and Land Use Law Center, Inc., Stuart, (withdrawn as counsel after filing brief) and Richard Grosso, General Counsel, of the Environmental and Land Use Law Center, Inc., Fort Lauderdale, for appellants.
David L. Jordan, Deputy General Counsel, of the Department of Community Affairs, Tallahassee, for appellee Florida Department of Community Affairs.
David A. Acton, Senior Assistant County Attorney, and Stephen Fry, County Attorney, Martin County Administrative Center, Stuart, for appellee Martin County, Florida.
Johnathan A. Ferguson of Ruden, McClosky, Smith, Schuster & Russell, P.A., Port St. Lucie, and John H. Pelzer of Ruden, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellee Dick Blydenstein.
DAMOORGIAN, DORIAN K., Associate Judge.
The Appellants, Sally O'Connell, Donna Meltzer, and Martin County Conservation Alliance Inc. ("MCCA"), a Florida not-for-profit corporation, are appealing a final order of the Department of Community Affairs ("Department"). Because we find that Appellants lack standing to appeal this order, we dismiss the appeal.
The Appellants challenged three amendments to the Martin County Comprehensive Growth Management Plan adopted by Martin County, Florida. A formal hearing was conducted by an Administrative Law Judge ("ALJ") of the Division of Administrative Hearings. The ALJ issued a Recommended Order to the Department, recommending entry of a final order finding *675 the amendments in compliance. After considering the Exceptions to the Recommended Order, the Department accepted the order with minor changes and found the amendments in compliance pursuant to section 163.3184(1)(b) of the Florida Statutes. Appellants appeal this final order.
Standing on appeal requires more than standing at the administrative level. See Daniels v. Fla. Parole & Prob. Comm'n, 401 So.2d 1351, 1354 (Fla. 1st DCA 1981), aff'd sub nom., Roberson v. Fla. Parole & Prob. Comm'n, 444 So.2d 917 (Fla.1983), abrogated on other grounds by, Griffith v. Fla. Parole and Prob. Comm'n, 485 So.2d 818 (Fla.1986). In Daniels, the court stated that:
[t]he fact that a person may have the requisite standing to appear as a party before an agency at a de novo proceeding does not mean that the party automatically has standing to appeal. The APA's [Administrative Procedure Act] definition of a party recognizes the need for a much broader zone of party representation at the administrative level than at the appellate level.... [A] person who participates in such a proceeding by a statute, rule, or by an agency's permission, may not necessarily possess any interests which are adversely, or even substantially, affected by the proposed action.
Id. at 1354; see also Fox v. Smith, 508 So.2d 1280, 1281 (Fla. 3d DCA 1987). In order to have standing on appeal under section 120.68(1), Florida Statutes (2003), the Appellants must be not only "affected," but "adversely affected by [the] final agency action."[1] Here, the Appellants have failed to demonstrate that they were adversely affected by the agency's action.
We start our analysis with the United States Supreme Court's ruling in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), where the Court considered whether the Sierra Club, an organization "with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations" had standing to object to the construction of a Walt Disney ski resort located next to the Sequoia National Park in the Sierra Nevada Mountains. Id. at 729-32, 739, 92 S.Ct. 1361. As in this case, the controlling statute required a person to be "`adversely affected or aggrieved' " to seek judicial review. Id. at 732-33, 92 S.Ct. 1361 (quoting 5 U.S.C. § 702).
The Court found that the Sierra Club's asserted interest to preserve the area from commercialization and to protect the environment, while being important "ingredients of quality of life," did not meet the requirements of the injury in fact test requiring a "party seeking review be himself among the injured" to have standing. Id. at 734-35, 92 S.Ct. 1361. Neither the Sierra Club nor its members asserted that they owned property in the area in question or that they even used the area. Id. at 735, 92 S.Ct. 1361. The Court stated that "a mere `interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization `adversely affected' or `aggrieved' within the meaning of" the statute. Id. at 739, 92 S.Ct. 1361.
*676 Our supreme court has also considered the standing of a public interest advocacy organization in Legal Environmental Assistance Foundation ("LEAF") v. Clark, 668 So.2d 982 (Fla.1996), where the organization challenged the Public Service Commission's adoption of "numeric demand-side management goals" to conform with "Florida's Energy Efficiency and Conservation Act" ("FEECA"). Id. at 983. LEAF's asserted interest in increasing the efficiency of energy services mirrored the purposes of FEECA and the demand-side goals. Id. at 987. Thus, the court in LEAF, held that LEAF did not have the requisite standing to appeal because its interests were not "adversely affected" by the agency action. Id.
This court addressed a similar standing issue in Challancin (In re Surface Water Management Permit No. 50-01420-S) v. Florida Land & Water Adjudicatory Commission, 515 So.2d 1288 (Fla. 4th DCA 1987). We considered the Audubon Society's standing to challenge the issuance of a permit by the South Florida Water Management District to the Appellants who were attempting to build a project known as J-Mark Fishing Village on Torry Island in Lake Okeechobee. Id. at 1289. The statute required the Audubon Society to demonstrate that it was "adversely affected" by the permit's issuance. Id. at 1292. This court noted that unlike the situation in Morton, the parties did allege actual ownership of land in the affected area. Id. at 1293. The Audubon Society's interest involved a concern with flood waters and the depletion of the water supply, both interests directly touching all property owners. Id. The Audubon Society had therefore demonstrated that it would be "adversely affected" by the issuance of the permit. Id.[2]
Unlike Challancin, however, none of the individual Appellants have stated how the amendments will adversely affect them. The MCCA has also failed to assert how its members will be adversely affected by the amendments.[3] The Appellants state that they or their members own property in Martin County; however, they have not asserted that their property is located near the sites affected by the amendments or how they would be adversely affected by the amendments.
The petition for a formal hearing filed by the Appellants, stated that:
[t]he subject matter of this proceeding is within the scope of interest of the MCCA, which has among its primary purposes and goals involvement and advocacy concerning growth management in Martin County and the enforcement of the Comprehensive Plan on behalf of its members and the citizens at large. It is among the primary purposes of the MCCA to work to preserve community and natural resources and quality of life *677 in Martin County, and to enforce laws designed to further these goals of its members and the citizens at large.
As in Morton, the MCCA's asserted interest is only a general interest in maintaining the quality of life in Martin County by controlling future land use and managing growth in the county. This general interest, unlike the concern of a devastating flood or the exhaustion of the water supply, does not have a direct impact on individual property owners, sufficient enough to establish that the MCCA or its individual members will be adversely affected by the proposed amendments. See also Fla. Rock Props. v. Keyser, 709 So.2d 175, 177 (Fla. 5th DCA 1998) (considering a statute that required a person to be adversely affected to have standing and finding that an allegation that a person owns property in a county where rezoning is to take place is not sufficient to show the plaintiff was adversely affected where the particular plaintiff "never demonstrated any specific injury, only that the county would not be as bucolic as it once was," and thus finding that the plaintiff was "a citizen with an interest in the environment and nothing more").
Accordingly, we conclude that the Appellants do not have standing to challenge the Department's final order on appeal.
The appeal is DISMISSED.
POLEN and MAY, JJ., concur.
NOTES
[1] "[T]here are four requirements for standing to seek ... [judicial] review [of a final agency action]: (1) the action is final; (2) the agency is subject to provisions of the act; (3) the person seeking review was a party to the action; and (4) the party was adversely affected by the action." Legal Envtl. Assistance Found. v. Clark, 668 So.2d 982, 986 (Fla. 1996). Only the fourth requirement is at issue in this case.
[2] The first district suggested that Challancin was sub silencio overruled by LEAF. See Fla. Chapter of the Sierra Club v. Suwannee Am. Cement Co., 802 So.2d 520 (Fla. 1st DCA 2001). We respectfully disagree. "[A] catastrophic loss of South Florida's water supply" or "devastating flood waters" would adversely affect the litigants' property. Challancin, 515 So.2d at 1293. Thus, our court applied the same standard as the supreme court in LEAF. The factual differences in the cases simply mandated different outcomes on the issue of standing to appeal.
[3] In general, an association has standing to sue "on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Fla. Home Builders Ass'n v. Dep't of Labor & Employment Sec., 412 So.2d 351, 353 (Fla.1982).