967 So.2d 427 (2007)
STRANAHAN HOUSE, INC., and Friends of the Park at Stranahan House, Inc., Appellants,
v.
CITY OF FORT LAUDERDALE, a Florida Municipal Corporation, and Coolidge-South Markets Equities, L.P., a Delaware Limited Partnership, Appellees.
No. 4D06-4230.
District Court of Appeal of Florida, Fourth District.
October 31, 2007.
*429 W. Tucker Gibbs of W. Tucker Gibbs, P.A., Coconut Grove, for appellants.
Alain E. Boileau and Robert H. Schwartz of Adorno & Yoss LLP, Fort Lauderdale, for appellee City of Fort Lauderdale.
Helaina Bardunias and Robert S. Hackleman of Gunster, Yoakley & Stewart, P.A., Fort Lauderdale, and Brigham Moore, LLP, Miami, for appellee Coolidge-South Markets Equities, L.P.
SHAHOOD, C.J.
Stranahan House, Inc., and Friends of the Park at Stranahan House, Inc. ("Friends")(collectively "Stranahan") appeal the trial court's final order in favor of the City of Fort Lauderdale ("City") and Coolidge-South Markets Equities, L.P. ("Coolidge"). The order dismissed Stranahan's complaint for declaratory judgment and injunctive relief. We hold that the trial court erred in finding that it had previously adjudicated the issues raised in Stranahan's complaint. We also hold that Stranahan has standing to maintain the present suit. We therefore reverse and remand.
This suit arises from Coolidge's attempt to develop a downtown Fort Lauderdale property known as the Hyde Park Market site, located at 500 East Las Olas Boulevard. The property lies adjacent to the Stranahan House on the north bank of the New River. The Stranahan House is a historic museum that is the former home of Frank and Ivy Stranahan. The Stranahans were wealthy traders, philanthropists, and civic leaders, and are often referred to as the "founding family" of Fort Lauderdale.
The Fort Lauderdale Historical Society purchased the Stranahan House in 1975. The City designated it a Historic District the same year. The Stranahan House is zoned as an H-1 Historic Preservation District under the Unified Land Development Regulations ("ULDRs"). However, the adjacent Hyde Park Market site was not designated a Historic Preservation District. The Hyde Park Market site is *430 zoned as a Downtown Regional Activity Center  City Center, which permits an intense level of land use.
Coolidge purchased the Hyde Park Market property in 1998. The following year, Coolidge submitted its original site plan to the City for developing a 38-story condominium tower on the property. In 2000, the Hyde Park Market site was the subject of an eminent domain proceeding by the City, which wished to put a public park on the property.[1] In May 2001, Stranahan and the City entered into an agreement ("Agreement") whereby Stranahan would contribute funds towards the acquisition of the property. The Agreement further provided that the City "in its sole discretion, is responsible for all actions to be taken in connection with the acquisition" of the Hyde Park Market site. The City would have "the sole right and authority in all negotiations and determinations regarding the acquisition" of the property.
In March 2002, the circuit court granted summary judgment against the City on its eminent domain petition. The court concluded there was no reasonable necessity for condemning the site for use as a park. The court also found that the Historic Preservation Element of the City's Comprehensive Land Use Plan ("comprehensive plan") did not include the Hyde Park Market site.
In November 2004, the circuit court approved a Consent Final Judgment entered into between the City and Coolidge containing the terms of a settlement negotiated by the parties and approved by the City Commission. Coolidge agreed to suspend its counterclaims and submit an alternative site plan. The alternative site plan would provide for the same intensity of development that Coolidge proposed in its original site plan, but would reconfigure the proposed building in order to create a broad, park-like plaza between the condominium building and the Stranahan House. Coolidge would convey the plaza area to the City subject only to an easement for joint use by Coolidge consistent with the plan.
The Consent Final Judgment stated that the original site plan complied with all applicable ULDRs as they existed on September 8, 1999, and that the original site plan was consistent with the comprehensive plan. The Consent Final Judgment also provided that the 1999 ULDR standards were the "applicable regulations" that would govern the alternative site plan. The parties agreed that if, for any reason, Coolidge did not obtain all necessary approvals for the alternative site plan, the remainder of the Consent Final Judgment would be enforced with respect to the original site plan. Finally, the City agreed to "diligently expedite and cooperate" with Coolidge in obtaining all necessary approvals and permits to allow development of the alternative site plan.
The City Commission approved the alternative site plan on December 6, 2005, in a resolution that granted site plan approval and development of the Hyde Park Market site. Stranahan filed its complaint several months later for declaratory and injunctive relief against the City and Coolidge pursuant to section 163.3215, Florida Statutes (2006). The complaint challenged the City Commission's approval of the alternative site plan. It alleged that the development order approving the alternative site plan was inconsistent with the objectives and policies of the City's comprehensive plan regarding protection of *431 historic resources and neighborhood compatibility.
Stranahan's complaint alleged, among other things, that the City's failure to present the alternative site plan application to the Historic Preservation Board for review and comment was inconsistent with policies in the Historic Preservation Element of the comprehensive plan requiring such a review of the impact of developments on historic resources. Count I sought a declaration that the City acted contrary to the requirements of the comprehensive plan in approving the resolution that approved the site plan for the Hyde Park Market Property. It requested the court set aside and vacate the development order. Count II sought a permanent injunction against the issuance of any development orders, permits, or other development approvals pursuant to the development order for the project. It also sought to enjoin Coolidge from using the property or making improvements on it.
The City filed a motion to dismiss Stranahan's complaint on the basis that the issue upon which Stranahan was seeking injunctive and declaratory relief had previously been ruled upon and adjudged to finality by the court. Specifically, the City argued that the issue of consistency with the comprehensive plan was decided in the previous eminent domain action through the Consent Final Judgment. Stranahan contended that although the Consent Final Judgment stated that the original site plan was consistent with the City's comprehensive plan, it made no determination that the alternative site plan was consistent with the comprehensive plan. The trial court granted the City's motion to dismiss Stranahan's complaint. After a review of the complaint and the long history of the litigation over the Hyde Park Market site, the court found that the issues raised were no different than those previously raised and adjudicated by the court.
Stranahan contends that the trial court was incorrect in its determination that the issues raised had already been adjudicated because the issue of whether the alternative site plan is consistent with the City's comprehensive plan has never been adjudicated in any court. Stranahan maintains that the only way to determine the consistency of the alternative site plan with the comprehensive plan is by a complaint pursuant to section 163.3215 and this is the first such action it has brought.
The standard of review of a trial court's ruling dismissing a complaint for declaratory judgment is whether the trial court abused its discretion. S. Riverwalk Invs., LLC v. City of Ft. Lauderdale, 934 So.2d 620, 622 (Fla. 4th DCA 2006). "The test of the sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all." Id. (citations omitted). Section 163.3215(1), Florida Statutes (2006), provides that "subsections (3) and (4) provide the exclusive methods for an aggrieved or adversely affected party to appeal and challenge the consistency of a development order with a comprehensive plan adopted under this part."
The trial court's order dismissing Stranahan's complaint for declaratory relief focused on the Consent Final Judgment in determining that the issues raised were previously adjudicated. The Consent Final Judgment contains clear findings that the original site plan complied with all applicable ULDRs as they existed on September 8, 1999, and that the original site plan was consistent with the City's comprehensive plan. However, the Consent *432 Final Judgment contains no finding that the alternative site plan was consistent with the Comprehensive Land Use Plan, nor could it since the alternative site plan was not submitted until after the Consent Final Judgment was entered.
Nor was the issue of the alternative site plan's compliance with the comprehensive plan decided in any previous ruling of the trial court related to this litigation. In granting summary judgment against the City on its eminent domain petition, the circuit court concluded only there was no reasonable necessity for condemning the site for use as a park and that the Historic Preservation Element of the comprehensive plan does not apply to the Hyde Park Market site property. Appellees have not pointed to any prior ruling specifically addressing compliance of the alternative site plan with the City's comprehensive plan. The City Commission did not approve the alternative site plan until December 6, 2005, long after the summary judgment on the eminent domain case and the Consent Final Judgment.
The trial court's order dismissing Stranahan's complaint is based on the premise that the substantive inconsistencies Stranahan raises between the alternative site plan and the comprehensive plan are the same as those raised in previous litigation concerning the original site plan. Unfortunately, such a determination is not possible on this record because it does not contain the previous complaints or petitions. Assuming arguendo that the allegations are the same, the current complaint for declaratory and injunctive relief still addresses the alternative plan and the court's previous rulings addressed the original. We hold that Stranahan's challenge to the alternative plan was not addressed by any of the trial court's prior rulings.
Having determined that none of the trial court's prior rulings addressed the alternative site plan's compliance with the comprehensive plan, we turn to the issue of whether the Agreement or Consent Final Judgment prevent Stranahan from maintaining its action for declaratory and injunctive relief.
Coolidge contends that Stranahan is bound by the City's actions in connection with the Hyde Park Market property because Stranahan, by contract in the Agreement, authorized the City to make decisions regarding the property. Coolidge argues that Stranahan waived the current action in the Agreement. In support, Coolidge cites several cases relating to a party's waiver of the right to jury trial or waiver of the right to sue. See Kaplan v. Kimball Hill Homes Fla., Inc., 915 So.2d 755, 761 (Fla. 2d DCA 2005)(holding home buyers waived right of access to courts by agreeing to arbitration clause in contract with builder); Shay v. First Fed. of Miami, Inc., 429 So.2d 64, 66 (Fla. 3d DCA 1983)(holding developer waived its right to sue for specified period of time by agreeing to contract containing covenant not to sue provision).
The scope of the Agreement extended only to the City's attempted acquisition of the Hyde Park Market site by eminent domain. It may not reasonably be interpreted as barring Stranahan's challenge to a proposed site plan on the property that the City sought to condemn. Coolidge's reliance on cases concerning waiver of the right to sue or waiver of the right to a jury trial is thus misplaced. The waivers in those cases were applicable to the actual transactions at issue. Here, Stranahan's current suit is sufficiently separate from the City's attempt to acquire the Hyde Park Market site that the Agreement should not be interpreted as a waiver *433 of Stranahan's right to challenge ultimate approval of the alternative site plan.
Coolidge argues that the differences between the original site plan and the alternative site plan do not change the land development at issue, which the trial court had previously adjudicated consistent with the City's comprehensive plan in the Consent Final Judgment. Coolidge contends that Stranahan is bound to the Consent Final Judgment because Stranahan is in contractual privity with the City, who is a party to the Consent Final Judgment.
(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of a judgment as though he were a party. A person is represented by a party who is:
. . . .
(b) Invested by the person with authority to represent him in an action. . . .
Restatement (Second) of Judgments § 41 (1982). See also Kline v. Heyman, 309 So.2d 242, 244 (Fla. 2d DCA 1975) (stating that "even though a party in a subsequent suit was not a named party in a prior suit, such party is bound by the prior judgment [under estoppel of res judicata] if he participated in the first proceeding or was represented by a party to that proceeding").
Here, the Agreement between Stranahan and the City could not be considered to have vested the City with authority to represent Stranahan in Coolidge's subsequent counterclaim for declaratory relief in which it sought a declaration that its site plan complied with all land use laws. Thus, the Agreement and Consent Final Judgment do not operate to prevent Stranahan's complaint.
Finally, Coolidge asserts that both Stranahan and Friends lack standing to challenge the City's approval of the alternative site plan because they are not "aggrieved or adversely affected parties" under section 163.3215. An aggrieved or adversely affected party is defined as "any person or local government that will suffer an adverse effect to an interest protected or furthered by the local government comprehensive plan. . . ." § 163.3215(2), Fla. Stat. (2006).
Coolidge's standing argument is without merit. The adoption of section 163.3215 liberalized the standing requirements for enforcing a comprehensive plan. Payne v. City of Miami, 927 So.2d 904, 906-07 (Fla. 3d DCA 2005). In O'Connell v. Florida Department of Community Affairs, 874 So.2d 673, 676 (Fla. 4th DCA 2004), this court dismissed an appeal based on the appellants' lack of standing. The appellants challenged certain amendments to the Comprehensive Growth Management Plan adopted by Martin County. O'Connell, 874 So.2d at 674. They alleged that they owned property in Martin County, but they failed to state that their property was located near the affected sites or describe how the amendments would adversely affect them. Id. at 676; compare Sw. Ranches Homeowners Ass'n v. County of Broward, 502 So.2d 931, 934-35 (Fla. 4th DCA 1987)(rejecting county's challenge to appellant homeowners association's standing where group of adjoining property owners to proposed landfill alleged that pollution and possible drinking water contamination was inconsistent with county's land use plan).
In addressing an issue of standing, this court must look to the four corners of the complaint and accept all well-pled allegations as true. Payne, 927 So.2d at 906. In the present case, Stranahan's complaint alleges that Stranahan, as the adjoining *434 property owner, will be negatively affected by "increased traffic and the activity, lights, alteration of Stranahan's enjoyment of light and air, the visual and audio pollution caused by the development and the effect of the shadow cast over the Stranahan property at certain times of the year." Stranahan also alleged it was negatively affected by the City's failure to submit the alternative site plan to the historical preservation board for review and comment under the provisions of the comprehensive plan designed to evaluate the impact of such projects on historical sites. A purpose of Friends is to protect Stranahan House as a historical resource.
Stranahan and Friends meet the test for standing outlined in Florida Rock Properties v. Keyser, 709 So.2d 175, 177 (Fla. 5th DCA 1998). The interests alleged are protected by the City's comprehensive plan, they are greater than the general interest in community well-being, and the interests will be adversely affected by the development. The concerns about a group asserting a mere "general interest in maintaining the quality of life," which we held insufficient for a plaintiff to maintain standing in O'Connell, are not present here. See O'Connell, 874 So.2d at 677.
We reverse and remand for proceedings consistent with this opinion.
Reversed and Remanded.
STEVENSON, J., and BELANGER, ROBERT E., Associate Judge, concur.
NOTES
[1] City of Ft. Lauderdale v. Coolidge-South Mkts. Equities, No. 00-10449(09), 9 Fla. L. Weekly Supp. 383c (Fla. 17th Cir.Ct.2002).