VAN NORTWICK, J.,
dissenting.
When our panel first considered this appeal, I agreed that the evidence intro *866 duced below by Martin County Conservation Alliance (MCCA) and 1000 Friends of Florida, Inc., appellants, was not sufficient to establish appellate stañding under section 120.68, Florida Statutes (2009). Martin County Conservation Alliance v. Martin County, — So.3d at -, 2010 WL 2472197 (Fla. 1st DCA 2010). I respectfully, but strongly, disagree with the majority, however, that the failure to adequately demonstrate standing in this case warrants the imposition of the sanction of attorney’s fees under section 57.105, Florida Statutes (2009).[1] In my view, this case is not close to providing a basis to impose sanctions under section 57.105(1) or section 120.595(5).[2] The record reflects that there are material facts that support appellate standing which are more than sufficient to demonstrate that the assertion of appellate standing was not so without record basis to justify the imposition of sanctions. In addition, the erroneous standard applied in the sanction order conflicts with precedent of this court and other District Courts of Appeal under section 57.105. Further, the sanction order creates precedent that will severely chill appellate advocacy, especially for non-profit environmental organizations like the appellants here. Accordingly, I dissent to the order imposing sanctions.

Standards for Imposing Sanctions under Section 57.105(1)

Section 57.105(1) authorizes a sanction when the losing party’s attorney knew or should have known
that a claim or defense when initially presented to the court or at any time before trial:
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
*867 Under the current version of the statute, the standard for sanctions under section 57.105 is no longer “frivolousness.” However, in applying revised section 57.105, Florida appellate courts have recognized that, while the 1999 revision expands the circumstances in which fees may be awarded under section 57.105, the statute “still is intended to address the issue of frivolous pleadings.” Read v. Taylor, 832 So.2d 219, 222 (Fla. 4th DCA 2002); see also Connelly v. Old Bridge Village Co-Op, Inc., 915 So.2d 652, 656 (Fla. 2d DCA 2005); Pappalardo v. Richfield Hospitality Serv., Inc., 790 So.2d 1226, 1228 (Fla. 4th DCA 2001). The sanction order here essentially holds that an appeal which lacks standing warrants sanctions as a matter of course. The standard imposed by the sanction order is essentially a “mer-itless” standard — that is, the party sanctioned has simply lost on the merits or on standing — and such a standard is no more capable of precise definition than “frivolousness” under the prior version of the statute. See Visoly v. Security Pacific Credit Corp., 768 So.2d 482, 491 (Fla. 3d DCA 2000) (“We recognize that to some extent, the definition of ‘frivolous’ is incapable of precise determination.”).
In seeking to define when a claim or defense is “not supported by the material facts ... or ... the application of then-existing law” under section 57.105, Florida courts have applied standards that maintain a high barrier to the imposition of sanctions. For example, in Cowgill v. Bank of America, 831 So.2d 241, 242 (Fla. 2d DCA 2002), while the Second District affirmed a summary judgment in favor of Cowgill based on the application of the statute of limitations, it reversed an order imposing sanctions under section 57.105(1) “because the Appellant’s claim was arguably supported by material facts and then-existing law” (emphasis added); see also Stagl v. Bridgers, 807 So.2d 177, 177 (Fla. 2d DCA 2002) (“An award of attorney’s fees pursuant to section 57.105 is appropriate only when the action is ‘so clearly devoid of merit both on the facts and the law as to be completely untenable.’ ”) (quoting Brinson v. Creative Aluminum Prods., 519 So.2d 59, 60 (Fla. 2d DCA 1988)). Similarly, in Goldfisher v. Ivax Corp., 827 So.2d 1110, 1111 (Fla. 3d DCA 2002), the Third District held that the appellee could not recover appellate attorney’s fees under section 57.105 because, although the appellant “was not victorious ... neither his action nor subsequent appeal, were totally without merit.” (Emphasis added; citing Concrete & Lumber Enters, v. Guaranty Bus. Credit Corp., 829 So.2d 247 (Fla. 3d DCA 2002)).
In De Vaux v. Westwood Baptist Church, 953 So.2d 677, 683-685 (Fla. 1st DCA 2007), a case relied upon by the majority, we discussed the standards applicable to awarding fees under section 57.105(1). In De Vaux, we acknowledged that “the definition of ‘frivolous’ is incapable of precise determination.” Id. at 683 (quoting Wendy’s of N.E. Florida, Inc. v. Vandergriff, 865 So.2d 520, 524 (Fla. 1st DCA 2003) (quoting Visoly, 768 So.2d at 491)). We looked to the Restatement for definitional guidance. The Restatement establishes an objective and strict standard, explaining that “[a] frivolous position is one that a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal would accept it.” Restatement Third of Law Governing Lawyers, § 110, cmt. d. (2000). In addition, in Wendy’s, 865 So.2d at 524 (quoting Visoly, 768 So.2d at 491), we explained that
there are established guidelines for determining when an action is frivolous. These include where a case is found: (a) to be completely without merit in law and cannot be supported by a reason *868 able argument for an extension, modification or reversal of existing law; (b) to be [contradicted] by overwhelming evidence; (c) as having been undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (c) [sic] as asserting material factual statements that are false.
These cases establish rigorous standards that must be applied before awarding sanctions under section 57.105 which restrain a court’s authority to levy sanctions. Applying these standards to the facts before us, in my view, it cannot be said that the appellants’ standing arguments here are “completely untenable,” Stagl, 807 So.2d at 177, “completely lacking in merit,” Wendy’s, 865 So.2d at 524, or that appellants are asserting a position that “a lawyer of ordinary competence would recognize as so lacking in merit that there is no substantial possibility that the tribunal would accept it.” De Vaux, 953 So.2d at 683. Simply put, the sanction order here applies such a liberal standard that, if sustained, the precedent established will increase the use of sanctions under section 57.105 in contravention of the intent of the statute.
There are good reasons to apply section 57.105 with restraint. In Bridgestone/Firestone, Inc. v. Herron, 828 So.2d 414, 419 (Fla. 1st DCA 2002), we cautioned that:
The courts must apply section 57.105 ... carefully to ensure that it serves the purpose for which it was intended [to decrease the cost of employing the civil justice system]. If an order dismissing a claim or striking a defense routinely leads to a motion for attorney’s fees, the point of the statute would be subverted and, in the end, it might even have the reverse effect of making civil litigation more expensive. The need to adjudicate multiple fee claims in the course of a single case could create conflicts between lawyers and their clients, and it could take time away from the court’s main objective; that is, to resolve the controversy presented by the case.

Appellants’ Assertions of Appellate Standing

It is undisputed that the appellants possessed standing to appear in the administrative proceeding below. See § 120.569, Fla. Stat. (2009). But, as we have explained:
The fact that a person may have the requisite standing to appear as a party before an agency at a de novo proceeding does not mean that the party automatically has standing to appeal. The APA’s definition of a party recognizes the need for a much broader zone of party representation at the administrative level than at the appellate level.... [A] person who participates in [an administrative] proceeding by a statute, rule, or by an agency’s permission, may not necessarily possess any interests which are adversely, or even substantially, affected by the proposed action.
Daniels v. Fla. Parole & Probation Comm’n, 401 So.2d 1351, 1354 (Fla. 1st DCA 1981), aff'd sub. nom., Roberson v. Fla. Parole & Prob. Comm’n, 444 So.2d 917 (Fla.1983), abrogated on other grounds, Griffith v. Fla. Parole & Probation Comm’n, 485 So.2d 818 (Fla.1986). Under section 120.68(2), standing at the appellate level exists “if four conditions are satisfied: ‘(1) the action [was] final; (2) the agency is subject to the provisions of the [Administrative Procedure] Act; (3) [the person seeking review] was a party to the action which he seeks to appeal; and (4) [the party] was adversely affected by the action.’ ” Abbott Labs. v. Mylan Pharms., Inc., 15 So.3d 642, 652 (Fla. 1st DCA 2009) *869 (quoting Daniels, 401 So.2d at 1353). The fourth requirement is the only standing element at issue here. We are obligated to accept the material facts supporting standing as true and construe them in favor of the challenged party. Sun States Utils., Inc. v. Destin Water Users, Inc., 696 So.2d 944, 945 n. 1 (Fla. 1st DCA 1997).
In this proceeding, the appellants challenged Martin County ordinances that would have amended the Martin County Comprehensive Growth Management Plan. Before the administrative law judge (ALJ), the appellants introduced substantial evidence seeking to show that the amendments to the Plan would adversely impact appellants and their members. For example, the record reflects that members of both organizations testified that they regularly use and enjoy areas within the agriculture area included within the Plan amendments for outdoor and recreational activities such as bird watching, hiking, boating and kayaking. The appellants further asserted that the Plan amendments would modify the agriculture areas within the Plan by allowing subdivision development which would adversely affect their use of the land. A representative of Martin County Audubon Society, a member organization of MCCA, testified that the Audubon Society regularly uses such areas for field trips and educational excursions to watch bird species with unique habitat requirements. Further, the Audubon Society representative testified that the organization would be adversely affected by future projects authorized under the Plan amendments that will cause those tracts to become subdivided into smaller residential lots and fragment current agricultural lands.
Although the ALJ rejected the arguments of the appellants and found that, under the Plan amendments, development density would remain static and fragmentation will be decreased, those findings are not a basis for concluding that no material facts support an assertion of standing under section 120.68. The sanction order reasons that, since the ALJ found that the Plan amendments will not increase density, the appellants cannot establish that they are adversely impacted for the purposes of appellate standing. This conclusion erroneously merges issues relating to standing and the merits of this case. As the court explained in Reily Enterprises LLC v. Florida Department of Environmental Protection, 990 So.2d 1248, 1251 (Fla. 4th DCA 2008), the facts supporting standing should be considered separately from the merits. Considering the facts supporting standing together with the merits confuses standing and the merits “such that a party would always be required to prevail on the merits to have had standing.” Id. Although Reily addressed standing in the administrative proceeding under section 120.569(1), Florida Statutes, its reasoning applies equally to appellate standing under section 120.68. See also St. Martin’s Episcopal Church v. Prudential-Bache Sec., Inc., 613 So.2d 108, 110 n. 4 (Fla. 4th DCA 1993) (“the concept of standing should not be confused with the elements or merits of the claim”); Peace River/Manasota Reg’l Water Supply Auth. v. IMC Phosphates Co., 18 So.3d 1079, 1083 (Fla. 2d DCA 2009) (explaining that standing “does not depend on the elements or merits of the underlying claim”); Sun States Utils., Inc. v. Destin Water Users, Inc., 696 So.2d 944, 945 n. 1 (Fla. 1st DCA 1997) (“Standing should not be confused with the merits of a claim.”); St. Johns Riverkeeper, Inc. v. St. Johns River Water Mgmt., 54 So.3d 1051, 1054-55 (Fla. 5th DCA 2011). Further, since we based our decision solely on appellate standing, we have not even addressed the merits of the issues raised in this appeal.
*870 As a general proposition, “[standing is a legal concept that requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly.” Hayes v. Guardianship of Thompson, 952 So.2d 498, 505 (Fla.2006); see also Hutchison v. Chase Manhattan Bank, 922 So.2d 311, 315 (Fla. 2d DCA 2006); Gen. Dev. Corp. v. Kirk, 251 So.2d 284, 286 (Fla. 2d DCA 1971) (“Standing is, in the final analysis, that sufficient interest in the outcome of litigation which will warrant the court’s entertaining it.”). Thus, standing depends on the nature of the injury asserted as well as the purpose and scope of the administrative proceeding. Agrico Chem. Co. v. Dep’t of Envtl. Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981); Friends of the Everglades, Inc. v. Bd. of Trs. of the Internal Improvement Trust Fund, 595 So.2d 186, 189 (Fla. 1st DCA 1992); see also Hayes, 952 So.2d at 505. It does not depend on the elements or merits of the underlying claim. See St. Martin's Episcopal Church, 613 So.2d at 110 n. 4 (Fla. 4th DCA 1993). Therefore, standing — a forward-looking concept — cannot disappear based on the ultimate outcome of the proceeding. See Hamilton County Bd. of County Comm’rs v. State, Dep’t of Envtl. Regulation, 587 So.2d 1378, 1383 (Fla. 1st DCA 1991) (rejecting the Department’s argument that standing had “ceased to exist” based on amendments to the permit application proposed during the hearing and incorporated into the final permit).
The sanction order asserts that appellants essentially conceded they could claim no past or current adverse effect from the Department’s final order, but instead based their appeal on speculation. (Order at p. 12). I do not believe the briefs or record can fairly be read to support such a conclusion. Certainly, simply rearguing the facts previously presented to a lower tribunal might justify sanctions on appeal. See Procacci Commercial Realty, Inc. v. Dep’t of Health and Rehabilitative Servs., 690 So.2d at 603, 609 (Fla. 1st DCA 1997). But that is not the situation here. As the briefs make abundantly clear, the essence of appellants’ arguments on appeal are not factual arguments. To the contrary, on appeal appellants contend that the Plan provisions found by the agency to adequately protect the environment and farmland are either unlawfully vague or were misinterpreted by the agency as a matter of law. Yet, the majority justifies sanctions because appellants have not shown that the ALJ’s factual findings are unsupported by competent substantial evidence. The majority states:
According to Appellant’s counsel, the challenged amendments could have caused environmental harm, but were determined not to, as a result of legal interpretations they in good faith believed were flawed. We find this statement supportive of our conclusion that their appeal is without merit.... Appellants do not and cannot claim that the ALJ’s factual findings are unsupported by competent, substantial evidence.
(Order at p. 16). Again, on page 20, the majority focuses exclusively on the failure of appellants to raise an issue of fact. The majority observes that “no possible view of the evidence presented at the final hearing below would support a reasonable conclusion that appellants had standing to appeal.” The majority’s repeated reference to appellants’ failure to raise a fact question on appeal suggests they misapprehend the nature of appellants’ appeal.
Further, the majority dismisses appellants’ claim of adverse impact as mere speculation: “Appellants and their counsel filed a meritless appeal, able to assert only that the amendment might lead to negative results if a different decision-maker *871 reads the amendments in an absurd and literal manner, differently then now interpreted, and such a decision can be adverse to appellants’ environmental mission.” (Order at p. 19; italics in original). In fact, arguing for a different interpretation of the law, such as the Land Protection Amendment appellants challenge here, is the quintessential relief sought by an appeal which raises an error of law.
The case before us produced over a thousand pages of record and a recommended order of 53 pages. Over a dozen witnesses gave live testimony, eight of whom testified as to facts supporting the standing of the appellants. It is significant to me that counsel for the Department of Community Affairs, one of the appellees, has asserted that appellants should not be sanctioned under section 57.105(1). The majority’s conclusion that appellants’ assertion of appellate standing was “meritless,” so as to warrant sanction, fails to acknowledge the complexity of this appeal and ignores that the standing question presented here was a close call.
Appellant MCCA and appellate counsel Richard Grosso have participated in prior appeals challenging development orders which were dismissed for lack of standing: O’Connell v. Florida Department of Community Affairs, 874 So.2d 673 (Fla. 4th DCA 2004), and Melzer v. Florida Department of Community Affairs, 881 So.2d 623 (Fla. 4th DCA 2004). In both O’Connell and Melzer, the appellant presented substantially less evidence to support standing than was introduced in the case before us. In O’Connell, the court found that “none of the individual Appellants have stated how the amendments will adversely affect them,” that “MCCA has also failed to assert how its members will be adversely affected by the amendments,” that appellants “state that they or their members own property in Martin County; however, they have not asserted that their property is located near the sites affected by the amendments or how they would be adversely affected by the amendments,” and, finally, that MCCA’s interest “is only a general interest in maintaining the quality of life in Martin County.... ” 874 So.2d at 676-77. In Melzer, the court found that the only standing facts in the record were that appellants “are residents of Martin County.” 881 So.2d at 624. Further, in Melzer, there was no record evidence of use and enjoyment of lands that could be impacted by the comprehensive plan amendments at issue in that case. As discussed above, here appellants introduced substantially more evidence of their use and enjoyment of the affected lands and the adverse impact of the administrative action on their organizations and members — the facts on which appellate standing is based — than was the case in O’Connell and Melzer. Despite the conclusion by the respective appellate panels of the Fourth District that each of these appeals required dismissal for lack of appellate standing, neither panel found that the legislative mandate in section 57.105(1) required the imposition of sanctions based on a dismissal on this ground. The low threshold for imposition of sanctions set by the majority in the sanction order obviously applies a different standard than was applied by the Fourth District.

Chilling Effect of Sanction Order

The legislature enacted section 57.105 to “discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing the price tag of attorney’s fee awards on the losing parties.” Carnival Leisure Indus., Ltd. v. Holzman, 660 So.2d 410, 412 (Fla. 4th DCA 1995). As the sanctions order notes, applying sanctions in the appropriate cases “will protect this court’s ability to serve litigants with meritorious cases, will encourage lawyers to give thoughtful consideration as to whether there are non-frivolous grounds for an appeal before filing, and will dis *872 courage lawyers from raising meritless appellate arguments on the chance that they will ‘stick.’ ” De Vaux, 958 So.2d at 685.
Notwithstanding the positive purpose of the statute, I am deeply concerned that, by imposing sanctions in a case such as this, we will necessarily have a “chilling effect” on innovative legal argument and appropriate zealous representation, especially in complex and evolving areas of the law. If excessive use of sanctions chills vigorous advocacy, attorneys will not accept close cases, access to the courts will be restricted, and wrongs will not be addressed. Moreover, the precedent being set by this order will unduly discourage participation in the appellate process. This sanction order holds, in effect, that where a final order has found that the appellants would not be adversely affected by a development an assertion of appellate standing to challenge such order will inevitably result in section 57.105 sanctions. Such a liberal use of section 57.105 will lead to the intolerable development that only those with deep pockets, who can run the risk of sanctions if they lose, will seek appellate redress. Parties such as an average citizen, small business, or nonprofit organization, in good faith seeking review of a ruling that is reasonably believed to be erroneous, could be coerced into forgoing an appeal because they would be unable to risk their financial existence to potential sanctions. This chilling effect is especially present in cases in which a local nonprofit environmental organization, such as MCCA, challenges a development order impacting its community. In my view, such a chilling effect will not only reduce the ability of citizens to challenge environmentally adverse real estate development, but may constitute a denial of the guarantee of access to courts provided in Article I, section 21 of our State’s Constitution: “The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.” The Florida Supreme Court has recognized that the right to appeal an administrative order is implied by both the due process clause of article I, section 9, of the Florida Constitution, and the access to courts provision in article I, section 21. Scholastic Sys., Inc. v. LeLoup, 307 So.2d 166 (Fla.1974); see Padovano, Appellate Practice, § 4.5, n. 8 (West 2011 ed.). Financial barriers should not stand in the way of access to courts. Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424-25 (Fla.1992), receded from on other grounds in Agency for Health Care Admin. v. Assoc. Indus, of Fla., Inc., 678 So.2d 1239 (Fla.1996).
After the initial sanction order was issued in this case, in addition to the motions for rehearing en banc filed by appellants, the Florida Wildlife Federation, Florida Chapter of American Planning Association, at the Florida Audubon Society all sought leave to appear as amicus curiae to file briefs in support of appellants. The majority denies these motions. I would grant the motions. In my view, we can only benefit from the views of these amicus curiae which will be affected by the precedent established by this sanction order. Accordingly, I also dissent to the denial of these motions.

. Because I believe the order imposing sanctions against appellants and their counsel makes this case of exceptional importance and conflicts with our case law, I moved for en banc consideration of this case pursuant to rule 9.331, Florida Rules of Appellate Procedure, and section 6.2 of this court’s Internal Operating Procedures. Six judges voted for en banc consideration, eight judges voted against, and one judge was recused. In addition, based on my additional research and consideration undertaken in addressing the issues raised by the sanction order, I have become concerned that the dismissal of this appeal for lack of standing was erroneous. In Florida Chapter of the Sierra Club v. Suwannee American Cement Co., Inc., 802 So.2d 520 (Fla. 1st DCA 2001), this court dismissed an appeal taken by an environmental organization and local citizens group because the environmental group had not alleged facts that any of its individual members would be adversely affected and because the local citizens group premised its claim of appellate standing on its authority to appear at the underlying administrative proceeding. Here, the allegations of injury are. much more particularized, as detailed in the dissent. For the same reason, I believe the case before us is also distinguishable from Legal Environmental Assistance Foundation, Inc. v. Clark, 668 So.2d 982 (Fla.1996), a case on which Sierra Club relied.

. Section 120.595(5), Florida Statutes (2009), provides, in pertinent part, that "[w]hen there is an appeal, the court in its discretion may award reasonable attorney’s fees and reasonable costs to the prevailing party if the court finds that the appeal was frivolous, meritless, or an abuse of the appellate process Under this statute, we have held that an appeal is frivolous if it presents no justiciable question and is so "devoid of merit on the face of the record that there is little, if any, prospect whatsoever that it can ever succeed.” Procacci Commercial Realty, Inc. v. Dep't of Health & Rehabilitative Servs., 690 So.2d 603, 609 (Fla. 1st DCA 1997) (quoting Treat v. State ex rel. Mitton, 121 Fla. 509, 510-511, 163 So. 883, 883-884 (1935)); see also Consultech of Jacksonville, Inc. v. Dep’t of Health, 876 So.2d 731, 736 (Fla. 1st DCA 2004). Thus, the standard under section 120.595(5) imposes a greater burden than the standard under section 57.105.