STEVENSON, C.J.
This appeal stems from a chapter 120 administrative proceeding wherein the Jupiter Inlet District and two property owners challenged a dock permit sought by Paul Thibadeau and authorized by Florida’s Department of Environmental Protection (“DEP”). We affirm.
Thibadeau owns residential property on River Road in Jupiter, Florida, adjacent to the southern shore of the central embay *531 ment of the Loxahatehee River. The Lox-ahatchee River is classified as an “Outstanding Florida Water,” and also as an “Aquatic Preserve,” and is entitled to special protection because of its natural attributes. See Fla. Admin. Code R. 18-20.001(2) (Aquatic Preserves), 62-302.200(18), 62-341.215(12) (Outstanding Florida Waters). In August of 2002, Thi-badeau filed an application and notice of intent to use a noticed general permit (“NGP”)[1] to construct a single-family dock extending into the Loxahatehee River from the northwest side of his property. After insisting upon some modifications, the DEP approved the NGP and issued a letter of consent to use sovereign submerged lands. Thibadeau’s proposed project, as revised, consists of a 900-square-foot dock comprised of a 3-foot by 250-foot access walkway, a 6-foot by 25-foot terminal structure, and two 8-foot by 30-foot boat slips (one a “wet-slip”; the other a boat-lift).
Thereafter, in June of 2003, the Jupiter Inlet District (“JID”) filed a petition requesting a formal administrative hearing, raising issues concerning whether the dock met the criteria for an NGP. See § 120.57, Fla. Stat. (2006). JID further argued that the dock, which was to be built over sovereign submerged lands and in an area designated as an aquatic preserve, violated the limitations set forth in Florida Administrative Code chapters 18-20, pertaining to aquatic preserves, and 18-21, pertaining to sovereign submerged lands. Chapter 18-20 includes a rule requiring consideration of the cumulative impacts of a particular activity in the aquatic preserve, and chapter 18-21 includes the requirement that all structures “must be set back a minimum of 25 feet inside the applicant’s riparian rights line.” See Fla. Admin. Code R. 18-20.2006, 18-21.004(3). Finally, JID alleged the dock created a navigational hazard and inhibited its maintenance obligations under an agreement between it and the Board of Trustees of the Internal Improvement Trust Fund (“the Board”).
In May of 2004, Jeffrey and Andrea Cameron and Douglas Bogue, owners of residential property along the Loxahatehee River west of Thibadeau’s home, intervened in the proceedings. The Camerons and Bogue claimed that the dock would interfere with navigation and recreational activities and did not satisfy the criteria for issuance of an NGP. None of the inter-venors are involved in this appeal.
Following an extensive evidentiary hearing that included testimony from a myriad of permitting and engineering experts, the administrative law judge (“ALJ”) issued a recommended order ruling that Thibadeau be permitted to construct his dock pursuant to the NGP and letter of consent with some added conditions. The ALJ found that Thibadeau’s application met all the requirements for an NGP, and that the dock would not significantly impede navigation nor unreasonably infringe upon the riparian rights of nearby landowners. The ALJ also found the JID had standing in that it has “broad navigational and at least limited environmental responsibilities” in the central embayment and, thus, its interests were substantially affected by the proposed dock. The JID filed exceptions to the ALJ’s findings, challenging, among *532 other things, the determination that the dock complied with Florida Administrative Code rule 18-21.004(3)’s riparian line setback requirement. In denying the exception, DEP found “it was unclear that ... [JID] had standing to object” as the ALJ had found JID’s standing arose from its navigational and environmental responsibilities and the setback requirement was unrelated to the same. In any event, the agency upheld the determination that the proposed dock, with imposition of the ALJ’s additional conditions, satisfied all relevant criteria.
In this appeal, the JID challenges the findings made by the ALJ and the agency pertaining to its standing to challenge the dock’s compliance with the rule requiring a 25-foot setback from the riparian rights line and raises a myriad of complaints regarding the determination that the dock complied with all relevant rules and criteria, including the riparian line setback requirement. In his cross-appeal, Thibadeau insists, as he did below, that the JID lacked standing to challenge the dock’s construction on any level and to participate in the chapter 120 proceedings. We affirm without further comment as to the findings in the order appealed concerning the dock’s compliance with all relevant rules and criteria and write only to address the standing issues raised by the parties.
Standing to participate in section 120.57 hearings is afforded to those “whose substantial interests will be affected by proposed agency action.” See § 120.52(12)(b), Fla. Stat. (defining the term “party”); AmeriSteel Corp. v. Clark, 691 So.2d 473, 477 (Fla.1997).
[B]efore one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury.
Agrico Chem. Co. v. Dep’t of Envtl. Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981).
Thibadeau challenges the JID’s standing to object to the dock and to participate in the chapter 120 proceedings on two fronts. First, Thibadeau asserts that since the JID is an independent special district, in order to challenge the dock, it must have been delegated authority and responsibility for navigational safety, protecting recreational activities, or undertaking management activities in the central embayment and this is not the case. Second, Thiba-deau contends JID failed to satisfy the first prong of the Agrico test as it failed to demonstrate that its own rights, rather than simply the rights of citizens, would be affected. We are not persuaded by either argument.
True enough, independent special districts are created by the legislature, see sections 189.402(1), 189.403(1), (3), Florida Statutes, and, like agencies, their powers are limited to those granted them. Cf. State, Dep’t of Envtl. Regulation v. Falls Chase Special Taxing Dist., 424 So.2d 787, 793 (Fla. 1st DCA 1982) (stating that “[a]n agency has only such power as expressly or by necessary implication is granted by legislative enactment” and “[w]hen acting outside the scope of its delegated authority, an agency acts illegally”). JID was created for the purpose of “deepening and maintaining the Loxahatchee River ... for the preservation of the public health, for the public good, and for the use of the public.” Ch.2000-412, § 3(a), at 211, Laws of Fla. In addition, JID exercised its legislatively-given power to contract, see Chapter 2000-412, § 3(b)(1), at 211, Laws of *533 Florida, and section 607.0302, Florida Statutes, by entering into a management agreement for the Loxahatchee River with the Board, the body charged with the “administration, management, control, supervision, conservation [and] protection” of state lands. See § 253.03(1), Fla. Stat. The agreement authorizes JID to perform activities described in the “Management Plan for the Loxahatchee River,” which is a lengthy agreement with the purpose of “enhancing] recreational uses, improving] the productivity of the river, and preserving] and enhancing] the natural resources ....” It includes provisions regarding the enhancement of habitat, habitat management, water quality monitoring, and navigation. The plan envisions that JID will serve as a “clearinghouse and coordinator for activities relating to the river” and that JID “will plan and implement identified management options” the objective of which “will be to protect, enhance, and maintain the natural resources and public recreational value of the Loxa-hatchee River and the JID’s main objective of maintaining an open and safe navigation system.”
Absent any other considerations, JID’s contract with the Board clearly affords JID the right and ability to oppose any activity that would impede navigation or public recreation or harm natural resources in the areas governed by the agreement. Thibadeau does not dispute this. Instead, he insists that, as a consequence of paragraph 7 of the agreement, the JID has contracted away its right to oppose or object to a third party’s use of the land. Paragraph 7 provides that
The Board retains the right to enter the property and to engage in management activities other than those provided for herein following notification to and consultation with the Grantee and further retains the right to grant approval for compatible uses of the property to third parties during the term of this Agreement. The Board shall determine whether or not any proposed uses by a third party are compatible with the uses authorized herein.
It appears to us that the plain language of paragraph 7 reserves to the Board: (1) the right to engage in “management” activities of its own and apart from those undertaken by JID and (2) the right to make the ultimate determination regarding whether a particular use of sovereign submerged lands is consistent or “compatible” with the activities authorized by the agreement between it and JID. It does not provide that JID has no right to object or complain of a particular use. We, thus, reject Thi-badeau’s claims that the JID acted outside of its delegated authority, and thus illegally, and that the JID has no responsibility for navigational safety, protection of recreational activities, or undertaking management activities in the central embayment.
We also disagree with Thibadeau’s contention that the JID failed to demonstrate that its own rights, rather than the rights of citizens, would be affected. As the foregoing discussion illustrates, JID has its own rights and responsibilities regarding navigation, recreation, and management activities, and it presented some evidence that the dock would impede navigation, diminish public recreation, and harm natural resources. We thus reject Thibadeau’s claim that the JID wholly lacked standing to object to the dock and participate in the chapter 120 proceedings.
This, then, brings us to the standing argument advanced by the JID. In denying the JID’s exceptions to the AL J’s findings regarding the riparian rights line, the agency found “it was unclear that ... [JID] had standing to object.” In so stating the agency pointed to the facts that the JID’s Second Amended Petition had as *534 serted that its interest in the dock arose out of its maintenance and management activities in the Loxahatchee River and that the ALJ had found the JID’s standing arose from its navigational and environmental responsibilities, but the setback requirement “does not necessarily relate to these interests.” Despite such conclusion, the agency went on to consider the substance of the objections and concluded they were not “well-founded.” In this appeal, JID challenges (1) the agency’s statement concerning its standing regarding the riparian rights issue, insisting that standing is not determined on an issue-by-issue basis and that since it meets the threshold criteria to participate in the chapter 120 formal hearing it had standing to challenge the dock on all grounds and insist upon compliance with all criteria, and (2) the agency’s determination that the dock complied with the riparian line setback requirement.
 While standing to participate in chapter 120 proceedings is afforded to those whose “substantial interests” will be affected by the proposed action, standing to seek judicial review is narrower and limited to those who are “adversely affected by final agency action.” See § 120.68(1), Fla. Stat.; O’Connell v. Fla. Dep’t of Cmty. Affairs, 874 So.2d 673, 675 (Fla. 4th DCA 2004). We do not believe that JID has standing, on appeal, to challenge either the agency’s suggestion that it was unclear whether it had standing to object to the ALJ’s findings regarding the dock’s compliance with the riparian line setback requirement or to challenge the dock’s compliance with the riparian line setback requirement. This is so because JID cannot demonstrate that it was adversely affected by either ruling. Whatever doubts the agency may have had concerning JID’s standing to object to the dock’s compliance with the riparian line setback requirement, the agency went on to consider the merits of JID’s arguments. Thus, JID cannot be said to have been “adversely affected” as a consequence of the agency’s standing concerns.
We also conclude that JID has not shown it has been adversely affected with respect to its appellate claim that the dock did not actually comply with the riparian line setback requirement. Florida Administrative Code Rule 18-21.004(3)(d) provides in pertinent part that the proposed dock structure “must be set back a minimum of 25 feet inside the applicant’s riparian rights line.” Testimony at the hearing was to the effect that a riparian rights line is drawn so as to apportion access to open waters between adjoining upland property owners. See Shore Village Prop. Owners’ Ass’n v. State Dep’t of Envtl. Prot., 824 So.2d 208, 211 (Fla. 4th DCA 2002) (“In Florida, riparian rights include ‘(1) general use of the water adjacent to the property, (2) to wharf out to navigability, (3) to have access to navigable waters and (4) the right to accretions.’ ”) (quoting Tewksbury v. City of Deerfield Beach, 763 So.2d 1071, 1071 (Fla. 4th DCA 1999), quoting Belvedere Dev. Corp. v. Dep’t of Transp., 476 So.2d 649 (Fla.1985)). The JID does not own property adjoining Thibadeau’s and, thus, simply could not be “adversely affected” by the manner in which the riparian line was drawn or the dock’s compliance with the riparian line setback requirement.
We have considered the other issues on appeal, but find no reversible error. Accordingly, the final order of the DEP is affirmed.
TAYLOR, J., concurs.
WARNER, J., concurs specially with opinion.

. “A ‘noticed general permit’ is a type of permit for a particular activity within specific parameters which has essentially been pre-approved by rule.” Wentworth v. State, Dep’t of Envtl. Prot., 771 So.2d 1279, 1280 n. 2 (Fla. 4th DCA 2000). The NGP in this case is governed by Florida Administrative Code Rule 62-341.427, which authorizes construction of a private single-family dock provided certain criteria are met. These criteria include the requirements that the structure not impede navigability.