990 So.2d 1248 (2008)
REILY ENTERPRISES, LLC, Appellant,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Anthony Parkinson, Michael Cilurso and Thomas Fullman, Appellees.
No. 4D07-1751.
District Court of Appeal of Florida, Fourth District.
September 24, 2008.
*1249 Jack J. Aiello and Brian Seymour of Gunster, Yoakley & Stewart, P.A., West Palm Beach, for appellant.
Francine M. Ffolkes, Tallahassee, for appellee Department of Environmental Protection.
Virginia P. Sherlock and Howard K. Heims of Littman, Sherlock & Heims, P.A., Stuart, for appellees Anthony Parkinson, Michael Cilurso and Thomas Fullman.
SHAHOOD, C.J.
Reily Enterprises, LLC ("Reily") appeals the final order of the Florida Department of Environmental Protection ("DEP") denying its application for an environmental resource permit and sovereignty submerged lands authorization. We affirm because the DEP Secretary did not improperly reject the Administrative Law Judge's ("ALJ") findings of fact and did not err in concluding that petitioner Thomas Fullman had standing.
Reily applied to the DEP for a permit to build a 395-linear foot retaining wall and an 85-linear foot seawall on property it owns along the Indian River in Jensen Beach. The area is a gently sloping beach that contains mangrove fringes.
Anthony Parkinson, Michael Cilurso, and Thomas Fullman are individual property owners who live in nearby homes to the west of Reily's property.[1] Fullman lives on Skyline Drive and has a view over the Reily property to the lagoon from his home. The individual petitioners filed a petition for administrative hearing with *1250 the DEP, which they later amended, challenging Reily's permit application.
The Department of Administrative Hearings conducted an evidentiary hearing addressing whether the petitioners had standing and, if so, whether the permit should be issued. Following the hearing, the ALJ issued a recommended order concluding that the petitioners lacked standing to challenge Reily's permit. First, the ALJ found that the petitioners raised general "quality of life" concerns that "relate more to the Pitchford's Landing development than to the permitted activities." Second, the ALJ determined that petitioners had no right to go across Reily's property to use the river anyway, so the extent to which construction of the permitted work would prevent the petitioners from doing so could not confer standing. Third, the ALJ found that the evidence failed to show that the permitted work would materially diminish the aesthetic value of the existing shoreline. The ALJ concluded that "the evidence fail[ed] to establish that the project will affect Petitioners' use or enjoyment of the water resources in the vicinity of the Reily property or the aquatic preserve as a whole."
The ALJ also addressed the merits of the petition in case the DEP or an appellate court disagreed with his finding regarding standing. The ALJ found that the permitted work would not adversely affect the conservation of fish and wildlife, endangered or threatened species, and fishing or marine productivity and navigation. However, the ALJ determined that Reily "failed to meet its initial burden to present credible and credited evidence regarding the non-existence of wetlands in the areas to be impacted by the project." The extent of the wetlands and the impact to protected resources caused by the proposed seawall and retaining wall could not be determined absent a formal wetlands delineation. The ALJ therefore recommended that, if the petitioners were found to have standing, the proposed permit be denied absent an additional condition requiring an appropriate wetlands delineation to show that the upland aspects of the project would occur outside of the mangrove canopy and other wetland areas landward of the mean high water line.
Reily, the DEP, and the individual petitioners all filed exceptions to the ALJ's recommended order after it was submitted to the DEP Secretary for entry of a Final Order. The petitioners argued the ALJ erred in determining the petitioners lacked standing. The Secretary agreed with this contention as to petitioner Fullman. The Secretary concluded that Parkinson and Cilurso failed to assert environmental injury unrelated to the ability to access the Indian River directly from Reily's property, but that Fullman had testified to an asserted environmental injury unrelated to any prospective limitation of access directly across the Reily property. The Secretary's order concluded:
Based on the foregoing, I conclude (contrary to part of the ALJ's determination included in Conclusion of Law 93) that the general "quality of life" concerns raised by Dr. Fullman relate to the permitted activities, and not "more to the Pitchford's Landing development." I conclude furtherand contrary to part of the ALJ's legal determination included in Conclusion of Law 94that, applying the Agrico[[2]] test, "the extent to which construction of the seawall," including its appurtenant riprap... will preclude Dr. Fullman, in future, from "us[ing] and enjoy[ing] the shoreline along the river or the adjacent submerged lands" does "give [him] *1251 standing to challenge the permit." [footnotes omitted].
Having determined that Fullman had standing, the Secretary issued a Final Order granting the petitioners' challenge and denying the proposed permit. The Order found that competent substantial evidence supported the ALJ's finding that Reily "failed to meet its initial burden to present credible and credited evidence regarding the non-existence of wetlands in the areas to be impacted by the project."
Reily's first argument on appeal is that the Secretary failed to properly defer to the ALJ by applying the substantial, competent evidence test to the ALJ's findings of fact. We disagree.
Evidentiary matters such as credibility of witnesses and resolution of conflicting evidence are the prerogative of the ALJ as finder of fact in administrative proceedings. Heifetz v. Dep't of Bus. Regulation, 475 So.2d 1277, 1281-82 (Fla. 1st DCA 1985). An agency reviewing a recommended order may not reject or modify the findings of fact of an ALJ "unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence." § 120.57(1)(l), Fla. Stat. (2007).
Reily attempts to inject factual considerations properly applicable to consideration of the merits of the permit into the issue of standing. The problem arises from the fact that standing was tried as an issue with the merits of the permit rather than resolved before the hearing. As to the merits, the ALJ made several important factual findings that the permitted work would not harm certain environmental aspects in the area.
However, the ALJ did not make a blanket finding there would be no harm to the area, and the Secretary properly considered the facts applicable to standing separate from the merits. The Secretary based the legal conclusion that Fullman had standing upon the ALJ's Finding of Fact #11. This finding of fact was supported by Fullman's testimony in the record regarding his family's use of the affected area. Cf. Fla. Chapter of the Sierra Club v. Suwannee Am. Cement Co., 802 So.2d 520, 522-23 (Fla. 1st DCA 2001) (holding Sierra Club lacked standing where it failed to provide facts concerning any individual member whose use of river would be adversely affected). Reily's argument would confuse standing and the merits such that a party would always be required to prevail on the merits to have had standing.
Reily's second argument, that Fullman's testimony did not demonstrate sufficient future use of the river to give him standing, is also without merit. Specifically, Reily contends that Fullman's testimony was insufficient to support standing because it spoke vaguely in terms of the past and did not indicate that Fullman intended to use the river in the future. In Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981), the Second District stated the test for standing:
We believe that before one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury.
*1252 As stated above, the Secretary accepted the ALJ's Finding of Fact #11, which stated:
11. Petitioner Thomas Fullman can see the Indian River from his house across the Reily property. He and his family have "spent time down at the causeway," and they have "enjoyed the river immensely with all of its amenities" over the years. He is concerned that the project will affect his "quality of life" and "have effects on the environment and aquatic preserve [that he and his family] have learned to appreciate."
An examination of Finding of Fact #11 and Fullman's testimony supporting it reveals that Fullman's testimony was sufficiently specific and directed to future use of the river. Fullman testified that he has enjoyed the river "every day for many years now." Furthermore, he expressed concern that the permitted work would change his ability to enjoy the area for the rest of his life, which expresses an intent to use the area in the future.
Affirmed.
POLEN, J., concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
I respectfully dissent. The landowner essentially makes two arguments on appeal. First, it argues that the Secretary of the Florida Department of Environmental Protection failed to adhere to its limited scope of review as to whether substantial, competent evidence existed to support the Administrative Law Judge's (ALJ) finding that the permitted work would not harm the petitioner's substantial environmental interests. Heifetz v. Dep't of Bus. Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985). Second, the landowner argues that the petitioner's asserted use of the river was legally insufficient to confer standing. Mid-Chattahoochee River Users v. Fla. Dep't of Envtl. Prot., 948 So.2d 794 (Fla. 1st DCA 2006). I agree with the landowner on both arguments and would reverse.
Here, the ALJ specifically found the proposed permitted use of riprap was the better method of shoreline stabilization over native vegetation. The ALJ found the shoreline to the north and south of the landowner's property was already protected by seawalls and/or riprap. The ALJ found the project "will not adversely affect the conservation of fish and wildlife ... and will provide a benefit to fish and wildlife by providing shelter and habitat for benthic organisms, crustaceans, and small fish." The ALJ found the project would "not adversely affect endangered or threatened species or their habitat," "impact the fishing or recreational values or marine productivity in the area," "adversely affect navigation," "cause harmful erosion or shoaling or adversely affect water quality in the area. The ALJ also found no adverse secondary or cumulative impact to water sources. In short, the ALJ found that any impact on the aquatic preserve would be de minimus.
An agency is required to accept the findings of the ALJ unless they are not supported by competent, substantial evidence. Heifetz, 475 So.2d at 1281. The Secretary acknowledged this limited scope of review, but then abandoned its role and substituted its own findings and conclusions based on alternate evidence. The fact remains that the ALJ's findings of fact as they related to the environmental impact of the permitted work were supported by competent, substantial evidence and should not have been disturbed. I would reverse on this basis.
Alternatively, I would reverse on the issue of standing. In Agrico Chemical Co. v. Department of Environmental Regulation, *1253 406 So.2d 478 (Fla. 2d DCA 1981), the Second District Court of Appeal succinctly explained standing in environmental cases.
[B]efore one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury.
Id. at 482.
The petitioner failed to establish either prerequisite for standing. The petitioner testified that he had been a long time resident, and had raised his family and experienced the amenities of the River together with his family. In his opinion, the proposed construction of a seawall and riprap would "absolutely" affect "the quality of life." The ALJ found this generalized testimony insufficient to confer standing on the petitioner. I agree.
The petitioner's property was located a quarter mile from the permitted site. The petitioner had no legal right to cross the landowner's property. The ALJ concluded that the evidence failed "to establish that the project will affect the petitioner's use or enjoyment of the water resources in the vicinity of the landowner's property." Indeed, the ALJ recognized that the petitioner's "quality of life" concerns related to the planned future development and not to the limited permit for construction of the riprap.
The Secretary however found the petitioner's testimony concerning his generalized concerns over a perceived loss of enjoyment sufficient to confer standing. I suggest the requirement of a "substantial injury" requires more. It requires an "injury in fact" that is "substantial" and of "sufficient immediacy." The petitioner's testimony falls far short of that.
Courts have consistently rejected the standing of persons, organizations, and districts that are unable to establish a substantial injury. See, e.g., Bd. of Comm'rs of Jupiter Inlet Dist. v. Thibadeau, 956 So.2d 529 (Fla. 4th DCA 2007); Mid-Chattahoochee River Users v. Fla. Dep't of Envtl. Prot., 948 So.2d 794 (Fla. 1st DCA 2006); Fla. Chapter of the Sierra Club v. Suwannee Am. Cement Co., 802 So.2d 520 (Fla. 1st DCA 2001); Agrico Chem. Co. v. Dep't of Envtl. Reg., 406 So.2d 478 (Fla. 2d DCA 1981). For this additional reason, I would also reverse.
NOTES
[1] These individual petitioners belonged to The Jensen Beach Group, a group of neighbors that formed in opposition to Reily's proposed development in the area. Reily's proposed development, named Pitchford's Landing, includes the property where the seawall and retaining wall were to be built. The Jensen Beach Group was dismissed for lack of standing.
[2] Agrico Chem. Co. v. Dep't of Envtl. Regulation, 406 So.2d 478 (Fla. 2d DCA 1981).