ON MOTION FOR REHEARING

THOMAS, J.
This cause is before us on Appellants’ motion for rehearing and motion for rehearing en banc. We deny Appellants’ motions, withdraw our order of December 14, 2010, and substitute the following in its place.
We previously dismissed this appeal, holding “[t]he appellants have not demonstrated that their interests or the interests of the substantial number of members are ‘adversely affected’ by the challenged order, so as to give them standing to appeal.” Martin County Conservation Alliance v. Martin County, Dep’t of Cmty. Affairs, — So.3d -, 2010 WL 2472197 (Fla. 1st DCA 2010) (quoting § 120.68, Fla. Stat. (2009)). We then ordered Appellants and their counsel to show cause why sanctions should not be imposed upon them pursuant to section 57.105(1), Florida Statutes, for filing an appeal where standing was clearly not present.
Upon our own initiative, we now hold that this appeal was filed in violation of section 57.105(1), Florida Statutes. We impose sanctions against Appellants and their counsel for filing an appeal without citing material facts to support standing or “then existing law” to support an appeal based on the material facts as found below. We award attorneys’ fees to Martin County, the Department of Community Affairs, Martin Island Way, LLC and Island Way, LC, as required by the statute, to reimburse Appellees for the fees expended by them to defend this meritless appeal. Under the statute, the legislature has expressed its unequivocal intent that where a party files a meritless claim, suit or appeal, the party who is wrongfully required to expend funds for attorneys’ fees is entitled to recoup those fees.
*858 Based on the facts of this case and the applicable law on appellate standing under section 120.68, Florida Statutes, we find that under section 57.105, Appellees are clearly entitled to recoup their attorneys’ fees. Appellants’ appeal was dismissed by this court, because they failed to assert or establish material facts and controlling law demonstrating they are a “party who is adversely affected by final agency action.” § 120.68(1), Fla. Stat.; see Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982, 986-87 (Fla.1996); Fla. Chapter of the Sierra Club v. Suwannee Am. Cement Co., Inc., 802 So.2d 520 (Fla. 1st DCA 2001); Daniels v. Fla. Parole & Probation Comm’n, 401 So.2d 1351 (Fla. 1st DCA 1981). Under the legislatively designed structure of chapter 120, Appellants were afforded broad standing to raise all issues before an administrative law judge and the agency; having failed to factually establish how an adverse ruling harmed their interests, Appellants were not afforded further appellate review.
Because Appellants pursued appellate review without any foundation in law or fact, they are properly subject to sanctions under section 57.105, Florida Statutes. Appellants’ asserted basis for standing on appeal, that a future circuit court may interpret the land use plan amendments at issue differently than Martin County or the Department to somehow result in future adverse impact, is speculative and completely without merit in law and fact to establish appellate standing.
Section 57.105 does not require a finding of frivolousness to justify sanctions, but only a finding that the claim lacked a basis in material facts or then-existing law. See Long v. AvMed, Inc., 14 So.3d 1264, 1265 (Fla. 1st DCA 2009) (noting section 57.105 does not require a party to show complete absence of a justiciable issue of fact or law).
The Florida Supreme Court has recognized that courts will not adversely affect legitimate advocacy by imposing sanctions under section 57.105, Florida Statutes. See Boca Burger, Inc., v. Forum, 912 So.2d 561, 569 (Fla.2005) (“allowing appellate courts to impose sanctions on appel-lees ... will not chill representation, but instead will emphasize that counsels’ obligations as officers of the court override their obligations to zealously represent their clients.”) (emphasis added). Thus, we respectfully disagree with the dissent’s policy concerns that such sanctions would unduly chill zealous advocacy, just as this court rejected such concerns in de Vaux v. Westwood Baptist Church:
This case is not an instance of a court chilling creative lawyering. Certainly, lawyers are expected to be zealous advocates for the interests of their clients. They are also officers of the court, however, even though these two roles may sometimes appear to be in conflict.... A lawyer who files a ... meritless appeal ... without informing the client of the weakness of the claim is violating both a duty to serve the client’s interests and a duty to the judicial system.
[[Image here]]
We believe that applying sanctions in cases such as this will protect this court’s ability to serve litigants with meritorious cases ... and will discourage lawyers from raising meritless appellate arguments on the chance they will “stick.”
953 So.2d 677, 684-85 (Fla. 1st DCA 2007) (citations and footnotes omitted; emphasis added).
Furthermore, as does the dissent, we find positive policies embodied in the statute, because the statute protects those who are wrongfully required to pay attorneys’ fees for meritless legal actions. Here, Ap- *859 pellees were wrongfully required to defend an appeal that should never have been filed. Although the imposition of sanctions does impose a cost on one party, it does so to protect the wronged party. Regardless of whether the positive policy implications of the statute outweigh any negative impacts, however, that decision has properly been made by the appropriate branch — the legislature.
We are not at liberty to disregard this legislative mandate that courts “shall” impose sanctions in cases without foundation in material fact or law. In Westwood Baptist Church, we noted our prior case law finding that “the word ‘shall’ in section 57.105 evidences ‘the legislative intent to impose a mandatory penalty ... to discourage baseless claims, by placing a price tag on losing parties who engage in these activities.’ ” 953 So.2d at 685 (quoting Albritton v. Ferrera, 913 So.2d 5, 8-9 (Fla. 1st DCA 2005) (emphasis in original)). We also stated in that decision that “[w]e again remind the bar that section 57.105 expressly states courts ‘shall’ assess attorney’s fees for bringing, or failing to dismiss, baseless claims or defenses.” Id.
As to the constitutional concerns regarding access to courts, raised by the dissent, this issue was not raised by Appellants; thus, we decline to address it here. We note, however, that no appellate court has found that an application of sanctions for filing a meritless appeal under section 57.105 violates the Florida Constitution. Appellants engaged in substantial and lengthy administrative litigation, exercising their broad standing rights under chapter 120 to challenge the plan amendments at issue. The issues raised below were thoroughly reviewed by an Administrative Law Judge, who made extensive factual findings that were further reviewed by the Department of Community Affairs. In other words, at no time were Appellants denied access to the applicable legal process. Instead, under well-established case law, Appellants could not show any real, defined adverse impacts from the ruling below to justify appellate litigation.
To further explicate our decision, we present the facts and the procedural history, followed by an analysis of sections 120.68 and 57.105, Florida Statutes.

Facts and Procedural History

In 2007, the Martin County Commission passed two ordinances amending the Martin County Comprehensive Growth Management Plan (the Plan). The first amendment, known as the Land Protection Incentives Amendment (Land Protection Amendment), was submitted to create opportunities for permanent preservation of contiguous open space, environmentally sensitive land, and agricultural land use while maintaining residential capacity. The Land Protection Amendment created an optional development design for parcels of 500 acres or more, by authorizing clusters of residential units on smaller lots than the current minimum, while maintaining the density status quo, and permanently setting aside at least 50% of the parcel for preservation, continued agricultural use, or surface water management projects.
Significantly, the Land Protection Amendment requires future use of the 500-acre parcel to be modified through an additional amendment to the Plan in combination with a planned unit development agreement. The future amendment would address the permanently set aside portion of the parcel (minimum of 250 acres), while the planned unit development agreement would address the portion of the parcel that would contain the clustered development.
In addition, the Land Protection Amendment requires any clustered development to be fiscally neutral regarding public ex *860 penditures, specifies that lots must be larger than two acres, and prohibits development in environmentally sensitive areas. The amendment further requires acknowledgment of a permanent restriction against any future density increase. Finally, a policy within the amendment mandates that Martin County must consider whether to require more than 50% of the tract be set aside to ensure the set-aside area fills gaps in natural systems, wildlife corridors, greenways and trails. In sum, under the Land Protection Amendment, more than 250 acres of any 500-acre tract will remain undeveloped for public purposes, rather than having the tract simply divided among residential lots with homes.
The second amendment at issue, known as the Secondary Urban Services District Amendment (Urban Services Amendment), allows owners within the boundary of the Secondary Urban Services District to connect to public water and sewer facilities at the owner’s expense, thus eliminating septic tanks and private wells.
The Department of Community Affairs (the Department) initially disapproved of the Land Protection Amendment, while finding the Urban Services Amendment in compliance with section 168.3184(l)(b), Florida Statutes. The Department requested a formal administrative hearing regarding the Land Protection Amendment, and Appellants intervened. Soon thereafter, Martin County and the Department entered into a settlement agreement, with Martin County adopting compliance amendments for the Land Protection Amendment. Administrative litigation ensued, however, when Appellants continued to challenge the Amendments’ compliance. Appellees Martin Island Way, LLC, and Island Way, LC, then intervened on the basis that they are landowners who will be affected by the Urban Services Amendment.
The ALJ held a hearing. Following the hearing, Appellant Martin County Conservation Alliance asserted in its proposed recommended order that at least two of its members own land within or adjacent to property designated for agricultural use in the Plan, and they regularly use and enjoy the areas for outdoor and recreational activities. Appellant 1000 Friends of Florida joined Martin County Conservation Alliance in arguing that, in their view, the amendments will undermine comprehensive land use planning or harm the environment. Appellants repeatedly asserted that the Land Protection Amendment increased density in the 500-acre parcels, and it was ambiguous or vague regarding the location or pattern of development and protection of natural resources; thus, the Amendment allegedly lacked predictability. Appellants further asserted that the lack of meaningful standards will cause haphazard planning by negotiation and by the whim of the Martin County Commission. Appellants claimed standing under section 168.3184(1), Florida Statutes, because they met the definition of “affected persons”; however, Appellants did not argue that they will be adversely affected if the amendments are found to be in compliance. Appellants’ proposed recommended order does not assert that any specific environmental harm will result from approval of the amendments.
In his recommended order, the ALJ concluded that both amendments comply with chapter 163, Florida Statutes. In his factual findings, the ALJ found that the Land Protection Amendment does not allow for more development than currently allowed by the Plan. The ALJ also found the amendments’ goals are clear, leaving no basis to speculate that the Martin County Commission will make decisions to the contrary. For example, the Martin County Commission will be precluded from *861 approving planned unit developments or agricultural uses on the most environmentally sensitive part of a tract, or ignoring the importance of environmentally sensitive and agricultural lands and the impact that development patterns have on them. The ALJ found that the Land Protection Amendment requires at least 50% of an entire tract to be set aside for one of three public purposes, when coupled with other requirements of the current growth management plan.
As to the Urban Services Amendment, the ALJ found it will allow owners of real property within the Secondary Urban Services District to apply for connection to regional water and sewer services, with all connection costs paid by the owner. The ALJ found no credible evidence to establish any likelihood that the amendment will allow further extensions of water and sewer lines from the Secondary Urban Services District to properties outside the Urban Service Districts. Finally, the ALJ found Appellants’ testimony “was speculative at best and depended upon an unproven assumption that the county would violate the explicit provisions of the [amendment].”
The ALJ concluded that Appellants did not prove the amendments are contrary to Florida standards regarding comprehensive plans. Important to our analysis, the ALJ held that Appellants failed to prove that: 1) the amendments do not provide meaningful and predictable standards; 2) the amendments promote urban sprawl; 3) the amendments are not based on data and analysis; and 4) the Land Protection Amendment is inconsistent with the Plan.
Appellants filed 25 exceptions to the recommended order. They did not challenge the benefits of extending water and sewer service, nor did they dispute the ALJ’s findings that the amendments will positively affect the environment, fire safety and drinking water quality, and that taxpayers will not be adversely affected.
The Department adopted the ALJ’s findings of fact and conclusions of law in toto, rejecting Appellants’ exceptions. Appellants appealed and, as noted, this court dismissed the appeal, finding they lacked standing because they could not establish that they were an aggrieved party. See Martin County Conservation Alliance, — So.3d at -.

Analysis

Standing Under Section 120.68, Florida Statutes

Appellants’ appeal was dismissed because they failed to assert that they are a “party who is adversely affected by final agency action.” § 120.68(1), Fla. Stat. To establish the foundation for appellate standing under section 120.68, it was incumbent upon Appellants, at the very least, to present evidence below of a reasonable possibility that the plan amendments, as interpreted, will lead to increased density, environmental degradation, or some other relevant, concrete evidence of harm that could adversely affect them.
Instead of directly addressing standing on appeal in their Initial Brief, Appellants argued: “The potential for a ‘bait and switch,’ whereby these amendments are approved on the promise of positive outcomes under the law, but in a subsequent judicial proceeding are interpreted differently under the applicable ‘strict scrutiny5 standard of review, is the primary basis of this appeal” (Emphasis added.) In other words, Appellants essentially conceded they could assert no past or current adverse affect from the Department’s final order, but instead based their appeal on speculation.
Appellants’ speculation regarding future judicial interpretations of either amend *862 ment is not ripe for review at this time. If such were a reasonable basis for appellate standing under section 120.68, anyone could appeal any administrative ruling he or she disagreed with on the mere claim that future courts or political decisions could adversely affect them.
As this court stated nearly 30 years ago,
[t]he fact that a person may have the requisite standing to appear as a party before an agency at a de novo proceeding does not mean that the party automatically has standing to appeal. The [Administrative Procedures Act’s] definition of a party recognizes the need for a much broader zone of party representation at the administrative level than at the appellate level. For example, in rulemaking, a large number of persons may be invited or permitted by the agency to participate as parties in the proceeding, so as to provide information to the agency.... [A] person who participates in such a proceeding by authorization of a statute or rule, or by permission of an agency, many not necessarily possess any interests which are adversely, or even substantially, affected by the proposed action.
Daniels, 401 So.2d at 1354 (citation omitted), affd. sub. nom., Roberson v. Fla. Parole & Probation Comm’n, 444 So.2d 917 (Fla.1983).
In Daniels, we found that an inmate who contends his parole release date was erroneously calculated has adequately established that his substantial interests were adversely affected by final agency action. 401 So.2d 1354-55. “There can be little question that a determination affecting when an inmate may be returned to society is perhaps the most crucial action affecting his prison life.” Id. at 1355. In Legal Environmental Assistance Foundation, Inc. v. Clark, 668 So.2d 982, 986-87 (Fla.1996), the supreme court agreed with this court’s holding in Daniels and held that “LEAF must therefore still demonstrate that it will be adversely affected by the Commission’s decision.”
Instead of arguing that this precedent should be overturned or reconsidered, Appellants argue that associational standing satisfies the requirements of section 120.68. Appellants’ reliance on Reily Enterprises v. Florida Department of Environmental Protection, 990 So.2d 1248 (Fla. 4th DCA 2008), is unavailing. There, the ALJ made a specific factual finding that established standing; here, Appellants can point to no such finding, even though the ALJ found associational standing existed at the administrative hearing. In fact, Reily cites to our decision in Florida Chapter of the Sierra Club as an example of a case where assertions of appellate standing without adverse impacts must fail. Reily, 990 So.2d at 1251.
We disagree with Appellants that the law on standing is so fact specific and subjective that such a dispute can never be the subject of sanctions. Although Appellants presented admissible evidence below that a few of their members had legitimate environmental interests in challenging the comprehensive plan amendments under section 163.3184(1), Florida Statutes, they failed to present any competent evidence that the amendments, if implemented, would adversely affect them. In Sierra Club, we held in clear terms that merely because members of an association might cite a general interest in the use of an affected natural resource, it must provide specific facts concerning a member who is individually adversely affected. Furthermore, Appellants had the responsibility to request that the ALJ make some findings in this regard, and if the judge refused, Appellants could raise this on appeal in asserting the need for a remand.
*863 In Appellants’ response to our order to show cause, they repeat their argument of legitimate interests in the administrative proceeding. Once again, this is not the issue; the relevant inquiry is whether these legitimate environmental issues were adversely affected, thus justifying an appeal under section 120.68. The ALJ found that the Land Protection Amendment does not allow for more development and that it will be easier and less costly for Martin County to acquire large tracts of property for conservation projects. Appellants cannot now claim that the amendments will increase development density or otherwise adversely affect their identified environmental interest when they made no credible factual claims to the contrary.
Appellants also argue in their response to the show cause order that Audubon of Martin County will be negatively impacted by future projects authorized by the Land Protection Amendment, because subdividing the property into smaller tracts of land will cause habitat fragmentation, thus making the property less desirable for species that require large tracts of land. The facts, however, are just the opposite. The Land Protection Amendment will not increase density or cause habitat fragmentation; the amendments help ensure consolidation of development on large parcels, and further benefit the public by providing for permanent preservation of open space, environmentally sensitive lands, and continued use of agricultural land.
According to Appellants’ counsel, the challenged amendments could have caused environmental harm, but were determined not to, as a result of legal interpretations they in good faith believed were flawed. We find this statement supportive of our conclusion that their appeal is without merit. Cf. Peace River v. IMC Phosphates Co., 18 So.3d 1079, 1084 (Fla. 2d DCA 2009) (standing established on appeal even where proof offered is insufficient to succeed on merits of claim in administrative proceeding, where party offered undisputed evidence that proposed mining permit could affect complaining party’s substantial interests, but ALJ found that proposed permit would not adversely affect river). Unlike in Peace River, Appellants offered no evidence below that the plan amendments will adversely affect their legally protected interests, because the evidence cannot show any density increase or other purported environmental adverse affects. Most significantly, Appellants do not and cannot claim that the ALJ’s factual findings are unsupported by competent, substantial evidence.
In addition, Appellants’ interest in access to the affected property is without merit, as well. No serious argument has been made that unauthorized entry onto private property is an interest that can be adversely affected by a land use change which will enhance the open spaces of the property. Appellants assert the law on standing is not the subject of clear, black-letter law, but rather is determined on a case-by-case basis, depending on the specific facts. This assertion, even if correct, is of no assistance to Appellants, as they have completely failed to show that their interests are adversely affected by the amendments.
As Appellee Martin Way notes, “none of [Apppellants’] testimony established that any of the members of the Appellants’ organizations were ‘adversely affected’ by these comprehensive plan amendments. It was an utter failure of proof that created this problem for Appellants on appeal.” Even if the unlikely scenarios Appellants predict come to pass regarding future development orders, Appellants and other parties can challenge such actions under chapter 163 in circuit court. See, e.g, Nassau County v. Willis, 41 So.3d 270, 276-78 *864 (Fla. 1st DCA 2010) (explaining section 163.3215, Florida Statutes, created broad and liberal standing threshold for persons with environmental interests to show they are aggrieved or adversely affected to challenge development). Appellants argue that the test for standing under section 120.68 is similar to the statutory test established in section 163.3215, which confers standing to challenge development orders as inconsistent with comprehensive plans. Appellants concede that standing is “liberalized” under section 163.3215, but argue that the statutes are similar enough to make their appeal sufficiently credible so as to avoid sanctions. We reject Appellants’ argument.
As noted in Nassau County, standing under section 163.3215 is broadly granted, but even under that test, a party must show an adverse effect on their interests, as defined by that statute. 41 So.3d at 276-78. There, for example, the county’s development order dramatically increased density. Furthermore, we explained in detail in Nassau County how that statute provides more standing than previously existed at common law. Id. at 276-78. By contrast, section 120.68 narrowly provides standing only to parties whose legitimate interests are adversely affected in some concrete manner.
In conclusion, Appellants’ basis for standing on appeal is speculative and insufficient to establish standing on appeal. Appellant’s response to our order to show cause further failed to adequately address standing under section 120.68.

Application of Section 57.105, Florida Statutes

Because Appellants have advanced an argument unsupported by material facts or law necessary to establish standing to appeal, sanctions must be issued. Section 57.105 provides the following relevant language authorizing the award of attorneys’ fees in administrative appeals:
(1) Upon the court’s own initiative ... the court shall award a reasonable attorney’s fee ... to be paid by to the prevailing party ... on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party’s attorney knew or should have known that a claim or defense ...
(a) Was not supported by the material facts necessary to establish the claim or defense; or
(b) Would not be supported by the application of then-existing law to those material facts.
§ 57.105(1), Fla. Stat. (emphasis added); Gopman v. Dep’t of Educ., 974 So.2d 1208, 1210 n. 2 (Fla. 1st DCA 2008) (citing E. Indus. Inc. v. Fla. Unemployment Appeals Comm’n, 960 So.2d 900, 901 (Fla. 1st DCA 2007)).
Section 57.105 applies to all who file appeals in Florida’s courts, including parties who have prevailed in the lower tribunal, if their legal position was without merit under the law or facts applicable to the case. The fact that a case was zealously litigated below, including extensive testimony and trial exhibits, does not shield a party from sanctions when a mer-itless appeal is filed. Were we to determine that complex cases are immune from sanctions under section 57.105, we would be abdicating our duty and violating Article II, section 3 of the Florida Constitution.
Appellants and their counsel filed a mer-itless appeal, able to assert only that the amendment might lead to negative results if a different decisionmaker reads the amendments in an absurd and literal manner, differently than now interpreted, and such a decision can be adverse to Appellants’ environmental mission. Appellants *865 made no attempt to justify appellate standing under section 120.68 in their Initial Brief, and did not cite or recognize long-established case law in their Reply Brief. See Legal Envtl. Assistance Found., 668 So.2d at 986-87 (environmental group lacked appellate standing to challenge portion of order where group could not be adversely affected by portion of utility order); Sierra Club, 802 So.2d at 521 (citing Legal Envtl. Assistance Found., 668 So.2d at 987, and Daniels, 401 So.2d .at 1351). Here, Appellants and their counsel, who have experience in this area of the law, ignored controlling case law and filed an appeal where no evidence was presented in the administrative forum that the challenged agency action adversely affected Appellants’ interests, as required to establish appellate standing under section 120.68.
Section 57.105 does not require a finding of frivolousness to justify sanctions, but only a finding that the claim lacked a basis in fact or law. See AvMed, 14 So.3d at 1265 (noting section 57.105 does not require a party to show complete absence of a justiciable issue of fact or law) (citing Gopman, 974 So.2d at 1210, and Wendy’s of N.E. Fla., Inc. v. Vandergriff, 865 So.2d 520, 523 (Fla. 1st DCA 2003)).
As discussed above, no possible view of the evidence presented at the final hearing below would support a reasonable conclusion that Appellants had standing to appeal. This is precisely the type of litigation the Legislature meant to prevent when it amended section 57.105 in 1999. Wendy’s, 865 So.2d at 523 (reiterating that this statute was amended as part of the Tort Reform Act to reduce frivolous litigation and decrease cost in the civil justice system by broadening available remedies).
We note further that Appellants did not make a good faith argument for a change in law pursuant to section 57.105(3). Although such a finding is not required here, their failure to comply with this provision is further reason to impose sanctions. When Appellants did not address standing in their Initial Brief, it is not tenable to assert that they should be held harmless under section 57.105(3). See Mercury Ins. Co. of Fla. v. Coatney, 910 So.2d 925 (Fla. 1st DCA 2005) (explaining it was insufficient to argue in Reply Brief that good faith effort was made to propose change in existing law).
Thus, we hold that the imposition of sanctions requiring Appellants and their attorneys to reimburse Appellees for their attorneys’ fees and costs in defending this appeal is only appropriate. The same sanction must provide for reimbursement of attorneys’ fees and costs for the intervenors, Martin Island Way, LLC, and Island Way, LC, because they jointly filed the Answer Brief with Appellees. Appellants have not asserted that the intervenors are not entitled to fees if this court imposes sanctions.

Conclusion

We impose a sanction of an award to Appellees of all appellate fees and costs “to be paid to the prevailing party in equal amounts by the losing party and the losing party’s attorney....” § 57.105(1), Fla. Stat. Appellees are the prevailing parties in this case. Included in this award are any fees incurred by the Department of Community Affairs, Martin County, and the intervenors, Martin Island Way and Island Way.
No motion for rehearing will be allowed.
HAWKES, J. concurs; VAN NORTWICK, J., dissents with written opinion.