# Supreme Court of Florida

_____

No. SC18-683
_____

**HALIFAX HOSPITAL MEDICAL CENTER, etc.,**
Appellant,

vs.

**STATE OF FLORIDA, et al.,**
Appellees.

April 18, 2019

LAWSON, J.

Halifax Hospital Medical Center, a special tax district, appeals a circuit court judgment denying validation of revenue bonds. We have jurisdiction, *see* art. V, § 3(b)(2), Fla. Const., and affirm, holding that Halifax is not authorized to carry out the project for which it sought to issue the bonds.

## BACKGROUND

Halifax was created by a special act of the Legislature in 1925. Ch. 11272, Laws of Fla. (1925); ch. 79-577, § 2, Laws of Fla. Since that time, Halifax's enabling act has undergone many revisions and amendments. Ch. 79-577, 79-578, 84-539, 89-409, 91-352, 2003-374, Laws of Fla. Halifax's current enabling act is

chapter 2003-374, Laws of Florida, and section 3 of this act constitutes Halifax's charter. Halifax's charter provides geographic boundaries for Halifax within Volusia County, grants Halifax certain authority to "establish, construct, operate, and maintain . . . hospitals, medical facilities, and other health care facilities and services," and authorizes Halifax to issue bonds "for the purposes set forth in this act." Ch. 2003-374, § 3(1), (5), (8).

In the proceedings below, Halifax sought validation of bonds that it intended to issue for the purpose of financing the construction of a hospital outside the geographic boundaries established in the special act. The proposed hospital would have been located in Deltona, Florida, and operated by Halifax with the expectation that Deltona residents would constitute the majority of the hospital's patients. Before filing the complaint for bond validation, Halifax agreed to undertake this project by entering into an interlocal agreement with the City of Deltona pursuant to section 163.01, Florida Statutes (2017), the Interlocal Act.[1] An intervenor challenged Halifax's complaint for bond validation, arguing that Halifax lacks the authority to operate a facility in Deltona because Deltona is outside Halifax's geographical boundaries. The circuit court agreed and denied the complaint for bond validation. Halifax appealed that ruling to this Court, invoking

_____

1. The full title of section 163.01 is the Florida Interlocal Cooperation Act of 1969.

our mandatory jurisdiction to review final orders entered in proceedings for the validation of bonds. *See* art. V, § 3(b)(2), Fla. Const.; § 75.08, Fla. Stat. (2017). Consistent with its arguments below, Halifax and its amici argue that Halifax possesses authority to operate a hospital anywhere it desires outside its boundaries so long as there is a demonstrated need for the facility and so long as Halifax demonstrates that it can do so profitably, thereby increasing revenue available to serve the needs of the district. In the alternative, Halifax contends that the interlocal agreement it entered with City of Deltona pursuant to the Interlocal Act serves as a sufficient grant of authority to build and operate the hospital.

## ANALYSIS

As a "special tax district," ch. 2003-374, §§ 1, 3(1), 3(16), Halifax has only the powers granted to it by legislative enactment, either expressly or by necessary implication. *See Bd. of Comm'rs of Jupiter Inlet Dist. v. Thibadeau*, 956 So. 2d 529, 532 (Fla. 4th DCA 2007) ("[I]ndependent special districts are created by the legislature, and, like agencies, their powers are limited to those granted them." (citations omitted)); *State, Dep't of Envtl. Regulation v. Falls Chase Special Taxing Dist.*, 424 So. 2d 787, 793 (Fla. 1st DCA 1982) ("An agency has only such power as expressly or by necessary implication is granted by legislative enactment."); *see also City of Cape Coral v. GAC Utils., Inc. of Fla.*, 281 So. 2d 493, 496 (Fla. 1973). Because the scope of Halifax's authority is a matter of

statutory construction, we review the issue de novo.  *City of Parker v. State*, 992

So. 2d 171, 175-76 (Fla. 2008).[2]

*Statutory Analysis*

A court's determination of the meaning of a statute begins with the language

of the statute.  *Lopez v. Hall*, 233 So. 3d 451, 453 (Fla. 2018) (citing *Holly v. Auld*,

450 So. 2d 217, 219 (Fla. 1984)).  If that language is clear, the statute is given its

plain meaning, and the court does not "look behind the statute's plain language for

legislative intent or resort to rules of statutory construction."  *City of Parker*, 992

So. 2d at 176 (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla.

2005)).

---

2. Halifax urges us to defer to its interpretation of chapter 2003-374 under the principle that an agency is entitled to deference concerning its interpretation of any statute it is charged with administering.  We decline to afford that deference.  Halifax's position implicates a recent amendment to article V, section 21 of the Florida Constitution, providing that courts of this state shall not defer to an agency's statutory interpretation.  The parties disagree over the applicability of that amendment to this case.  However, we need not resolve that dispute for the purposes of this case because the statute at issue is unambiguous.  Even before this new constitutional provision we did not apply the deference principle to unambiguous statutes.  *See, e.g., GTC, Inc. v. Edgar*, 967 So. 2d 781, 785 (Fla. 2007) ("[It is only] when a statutory term is subject to varying interpretations and . . . has been interpreted by the executive agency charged with enforcing the statute [that] this Court [would have] follow[ed] a deferential principle of statutory construction . . . .").

*The General and Special Laws Defining the Scope of Halifax's Authority*

Our analysis necessarily begins with chapter 189, Florida Statutes, the general law authorizing special districts. In addition to serving as the common authority for special districts in general, chapter 189 is expressly cited as the foundation for Halifax's creation in the special law creating Halifax. Ch. 2003-374, § 1, Laws of Fla.

Chapter 189 "provide[s] general provisions for the definition, creation, and operation of special districts." § 189.011(1), Fla. Stat. (2017). According to chapter 189, a special district is "a unit of local government created for a special purpose, as opposed to a general purpose, *which has jurisdiction to operate within a limited geographic boundary* and is created by general law, special act, local ordinance, or by rule of the Governor and Cabinet." *Id*. § 189.012(6) (emphasis added). Because the very essence of a chapter 189 "special district" is statutorily prescribed as operation within "a limited geographic boundary," § 189.012(6), that inescapably becomes the default authority for all special districts. In other words, although the Legislature certainly can grant a special district authority to operate outside of its defined geographic boundary, that extraordinary grant of authority would need to be express and unambiguous—clear enough to demonstrate that the Legislature has created a special district that will operate with a power not generally contemplated for chapter 189 special districts.

Chapter 2003-374 does not contain an express grant of authority for Halifax to operate hospitals outside the geographic boundaries established for the district and, when the relevant language is considered as a whole, only authorizes Halifax to operate within the district. Chapter 2003-374 provides in relevant part:

> The district may establish, construct, operate, and maintain such hospitals, medical facilities, and other health care facilities and services as are necessary. The hospitals, medical facilities, and other health care facilities and services shall be established, constructed, operated, and maintained by the district for the preservation of the public health, for the public good, *and for the use of the public of the district*. Maintenance of such hospitals, medical facilities, and other health care facilities and services *in the district* is hereby found and declared to be a public purpose and necessary for the general welfare of the residents of the district.

Ch. 2003-374, § 3(5) (emphasis added). Halifax seeks to isolate the first sentence of this provision, arguing that because the first sentence does not expressly *limit* its authority to "construct, operate, and maintain" medical facilities to the district's geographic boundaries, it acts as a grant of authority to do so outside of its boundaries.[3] As already discussed, that reading would be contrary to chapter 189,

---

3. Halifax attempts to bolster this argument using a backwards approach to statutory construction. Before acknowledging the language currently in effect, Halifax quotes its 1925 enabling act and then traces the history of legislative revisions in an effort to dictate how the 2003 act should be read. We reject Halifax's approach. *Nat. Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, 192 So. 3d 498, 504 (Fla. 2d DCA 2016) ("The interpretation of a statute begins 'with the plain meaning of the actual language' the statute employs." (quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 367 (Fla. 2013))); *see also Rollins v.*

and clearly insufficient to overcome the general rule stated in that chapter—which is that special districts are created to operate within their defined geographic boundaries.

In addition, it would be inappropriate to isolate the first sentence from the rest of the paragraph. *Trafalgar Woods Homeowners Ass'n, Inc. v. City of Cape Coral*, 248 So. 3d 282, 284 (Fla. 2d DCA 2018) ("[U]nder a longstanding fundamental principle applicable to statutes and ordinances, 'words, phrases, clauses, sentences and paragraphs of a statute may not be construed in isolation[.]' Rather, the sentence must be read in the context of the entire provision." (citation omitted)). Specifically, the second sentence references the "hospitals, medical facilities, and other health care facilities" authorized for construction, operation, and maintenance (in the first sentence), and explains that these facilities are being authorized "for the use of the public of the district." More importantly, the first sentence itself only authorizes Halifax to construct, operate, and maintain facilities "as are necessary." Necessary to what? Read in context, these words can only reasonably be understood to mean necessary to fulfillment of the public purpose for which the district is being created, which the third and last sentence explains as follows: "Maintenance of such hospitals, medical facilities, and other health care

---

*Pizzarelli*, 761 So. 2d 294, 299 (Fla. 2000) ("[W]hen the statutory language is clear, legislative history cannot be used to alter the plain meaning of the statute.").

facilities and services *in the district* is hereby found and declared to be a public purpose and *necessary for the general welfare of the residents of the district*." (Emphasis added.) Read together, this language is plain: it grants Halifax the authority to construct, operate, and maintain health care facilities within its district, which is defined according to the geographic boundaries in section 1 of Halifax's charter. Ch. 2003-374, § 3(1).[4]

For these reasons, we agree with the trial court that the Legislature has not authorized Halifax to establish, construct, operate, or maintain the out-of-district Deltona hospital for which it sought to issue revenue bonds. We now turn to Halifax's argument that any lack of authority is cured though the Interlocal Act and its interlocal agreement with the City of Deltona.

---

4. In addition to attempting to infer the authority to operate extraterritorially from various provisions beyond section 5, Halifax contends that its enabling act incorporates chapter 617, Florida Statutes, by reference and that this reference, combined with the power granted in the enabling act for Halifax to establish corporations, ch. 2003-374, § 3(3), gives Halifax the authority to establish and operate a hospital in Deltona. Halifax gleans this conclusion from sections 617.0301 and 617.0303(8)-(9), Florida Statutes (2018), which authorize the creation of corporations for any lawful purpose and grants a nonprofit corporation the authority to operate anywhere in the United States and to acquire property anywhere. Halifax's reliance on these provisions is misplaced. Not only must Halifax's activities serve its stated purpose, *see*, *e.g.*, § 189.012(6), but also, the bounds of Halifax's authority to create and establish a corporation is not what is at issue, as the bonds were not sought for the purpose of creating a corporation, but for the purpose of financing a hospital outside its geographic boundaries.

*The Interlocal Act*

Under the Interlocal Act, "[a] public agency," including a special district, "may exercise jointly with any other public agency of the state, of any other state, or of the United States Government any power, privilege, or authority which such agencies share in common and which each might exercise separately." § 163.01(3)(b), (4), Fla. Stat. (2017). The purpose of the Interlocal Act is "to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities." § 163.01(2). It is "intended to authorize the entry into contracts for the performance of service functions of public agencies." § 163.01(14).

By its terms, the Interlocal Act requires that any "power, privilege, or authority" that an agency commits to perform be one that it "might exercise separately" in the absence of an interlocal agreement. *See* § 163.01(4). Because Halifax does not have the independent authority to establish and operate a hospital in Deltona, it does not gain this authority under the Interlocal Act.

Halifax contends that failing to recognize that the Interlocal Act grants it the authority to act outside its geographic boundaries will strip the Interlocal Act of

meaning.  However, the Interlocal Act expressly states its effect: "to authorize the entry into contracts for the performance of service functions of public agencies." § 163.01(14).  Our decision does not deny this effect, and we cannot give the Interlocal Act a greater effect than its provisions establish.  *See Holly*, 450 So. 2d at 219 (explaining that this state's courts are "without power to construe an unambiguous statute in a way which would extend . . . its express terms or its reasonable and obvious implications" (quoting *Am. Bankers Life Assurance Co. of Fla. v. Williams*, 212 So. 2d 777, 778 (Fla. 1st DCA 1968) (emphasis omitted))).  Additionally, Halifax's primary argument ignores the reality that the federal government, Florida's state government, as well as the primary local governmental subdivision of the State—counties—do have overlapping geographic boundaries with all special districts, and that many other local governmental entities have overlapping geographic boundaries as well.  Given these realities, it is hardly true that the Interlocal Act will be stripped of all meaning unless we construe it as authorizing all special districts to operate outside of their geographic boundaries, as they deem appropriate, by interlocal agreement.

Halifax further argues that section 163.01(9)(a) shows that the Legislature contemplated that the Interlocal Act would lift geographic restrictions on agency action, as this subsection references extraterritorial activity.  Specifically, section 163.01(9)(a) provides as follows:

> All of the privileges and immunities from liability; exemptions from laws, ordinances, and rules; and pensions and relief, disability, workers' compensation, and other benefits which apply to the activity of officers, agents, or employees of any public agents or employees of any public agency when performing their respective functions within the territorial limits for their respective agencies shall apply to the same degree and extent to the performance of such functions and duties of such officers, agents, or employees extraterritorially under the provisions of any such interlocal agreement.

This language, standing alone, does not confer the authority that Halifax seeks. The Interlocal Act applies broadly to any public agency, "including, but not limited to, [a] state government, county, city, school district, single and multipurpose special district, single and multipurpose public authority," and others. § 163.01(3)(b). Some of these public agencies have broader powers than a special district, which is confined only to the powers granted expressly or by necessary implication in a legislative enactment, *Falls Chase Special Taxing Dist.*, 424 So. 2d at 793. Even a special district can have the power to operate outside its geographic boundaries when that power is provided by the special district's enabling act. Also, while a municipality generally cannot exercise extraterritorial powers, it can do so when authorized by law. Art. VIII, § 2(c), Fla. Const.; Op. Att'y Gen. Fla. 2008-01 (2008); Op. Att'y Gen. Fla. 2003-03 (2003). Therefore, the fact that the Interlocal Act contemplates that some functions under interlocal agreements will be performed extraterritorially does not mean that the Legislature granted all public agencies the right to act extraterritorially.

- 11 -

In fact, interpreting the Interlocal Act to have such an effect would render other statutes superfluous. Most notably, section 166.0495, Florida Statutes (2018), authorizes "[a] municipality [to] enter into an interlocal agreement pursuant to s. 163.01 with an adjoining municipality or municipalities within the same county to provide law enforcement services within the territorial boundaries of the other adjoining municipality or municipalities." *See also* § 288.9604(1), Fla. Stat. (2018) (authorizing the Florida Development Finance Corporation "to function within the corporate limits of any public agency with which it has entered into an interlocal agreement for any of the purposes of this act"). When drafting section 166.0495, the Legislature was clearly aware of the Interlocal Act, and yet, it perceived the need to create section 166.0495 to authorize extraterritorial operation of ordinary municipal functions under an interlocal agreement. Even if the language of Halifax's enabling act and the Interlocal Act were ambiguous, we would avoid any construction of them that would render other statutes superfluous. *See Hawkins v. Ford Motor Co.*, 748 So. 2d 993, 1000 (Fla. 1999).

## CONCLUSION

Because neither Halifax's enabling act nor the Interlocal Act gives Halifax the authority to operate outside its geographic boundaries, the circuit court properly denied the bond validation. In reaching this decision, we have not overlooked the concerns that Halifax and its amici raise about the effect of a

- 12 -

determination that Halifax cannot operate extraterritorially. However, this Court is not the proper forum for a policy decision as to whether Halifax or any other special district should be allowed to operate extraterritorially. *See Holly*, 450 So. 2d at 219. In any event, we note that this decision is based on the specific language of Halifax's enabling act, which we are not authorized to rewrite or construe contrary to its plain meaning. *See Westphal v. City of St. Petersburg*, 194 So. 3d 311, 313-14 (Fla. 2016). For these reasons, we affirm the circuit court's order denying bond validation.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAGOA, LUCK, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Volusia County - Bond Validations
      Christopher A. France, Judge - Case No. 2018-CA-030059

Elliot H. Scherker, Brigid F. Cech Samole, and Katherine M. Clemente of Greenberg Traurig, P.A., Miami, Florida,

      for Appellants

Martin B. Goldberg, Jason A. Coe, Jonathan L. Williams, Nicholas A. Ortiz, and Christopher K. Smith of Lash & Goldberg LLP, Miami, Florida; and Raoul G. Cantero of White & Case LLP, Miami, Florida

      for Appellees

Clifford B. Shepard of Shepard, Smith, Kohlmyer & Hand, P.A., Maitland, Florida,

for Amici Curiae Florida League of Cities, Florida Association of Counties, Inc., Florida Association of Special Districts, County of Volusia, a Political Subdivision of the State of Florida, City of Deltona, City of Largo, City of Safety Harbor, Osceola County, and Pinellas Suncoast Transit Authority

Kimarie R. Stratos, Maria R. Caldera, and Mallory L. Gold of Memorial Healthcare System, Hollywood, Florida,

for Amicus Curiae South Broward Hospital District d/b/a Memorial Healthcare System